JACKSON, *ex dem.* LANSING, *against* LAW & NELSON.

A tender of the money due upon a judgment does not discharge it, or take away the lien of the judgment creditor; but he may still redeem upon it, as a judgment creditor within the statute, (sess. 43, ch. 184, s. 3.)

A tender must be made before suit brought.

After judgment, the only

EJECTMENT for land in Hebron, Washington county, tried at the circuit in that county, July 14th, 1823, before WALWORTH, C. Judge.

The premises in question had formerly belonged to one Quackenbush; and on the 14th of April, 1821, they were sold on a *fi. fa.* against Quackenbush, upon a judgment docketed in 1806, to Law, the defendant. The lessor of the plaintiff redeemed upon junior judgments against Quackenbush; and took a sheriff's deed of conveyance, July 13th, 1822. One question at the trial was, whether these judgments were valid, and operative as a lien, at the time of redemption. They were in favor of one Whiteside; and the defendant proved, that previous to the sale already men-

way to make a tender effectual, is to bring the money into court; and move for, and obtain a rule to enter satisfaction upon the record; and, in the mean time, an order may be obtained restraining the sale of property on execution upon the judgment, if the sheriff refuse the money upon its being tendered; it being his duty to receive it.

It is always the duty of the sheriff to receive money tendered upon a *fi. fa.;* and forbear to sell.

The effect of a tender, when made in season, is merely to discharge the debtor from subsequent interest.

The principal is never discharged by a tender, unless under peculiar circumstances; as where there is not, after tender and refusal, any remedy to enforce the payment of the debt or performance of the duty.

Even a tender of money, upon a judgment, if followed up with the proper means to render it available, will bar a claim of interest.

Whether it will have this effect, if not so followed up? *Quere.*

tioned, on the 6th of May, 1818, the sheriff was proceeding to sell the premises in question, on writs of *fi. fa* upon the Whiteside judgments, and others; when Law, the defendant a junior judgment creditor, tendered to the sheriff, Lansing, the lessor, being present, a quantity of untold bank notes, upon the Whiteside executions, in order to compel the sheriff to sell on executions upon judgments younger than Law's. The tender was not objected to, on account of its being in bank notes, nor because the money was not counted. The sheriff swore, at the trial, that he had no doubt they were sufficient in amount; and accordingly proceeded to sell upon executions, on the junior judgments, Lansing becoming the purchaser.

It was upon the two Whiteside judgments, which were afterwards assigned to Lansing, the lessor, that he redeemed and obtained his conveyance.

Verdict for the plaintiff, subject to the opinion of this court.

The above, with the further particulars, stated in the opinion of the court, will fully present the question decided.

*J. Lansing*, for the plaintiff. The tender was with a view to compel a sale on a junior judgment. This is not sufficient. A tender should be absolute with the simple intent to pay the debt; otherwise it is bad. (*Eastland* v *Longshorn*, 1 Nott & M'Cord's Rep. 194. *Cole* v. *Blake*, Peak. N. P. Rep. 179. 1 Esp. Dig. pt. 1, p. 300. Gould's ed. and the cases there cited.) We admit that Law was privy to the judgment, and had a right to make payment; but it was too late to make a valid tender. A tender cannot be made upon a judgment. It must precede the commencement of a suit. Even the party, Quackenbush, could not have made a tender after the suit commenced; and the rights of the privy are certainly no greater than those of the party under whom he comes in. (Bothy's case, 6 Rep. 31. 1 Inst. 206, 207, 208.) Again, the levy was made, and the property of Quackenbush in the custody of the law; after which a tender cannot be made. (Pilk-

ington's case, 5 Rep. 76. *Pilkington* v. *Hastings & Mea cock*, Cro. Eliz. 813. *Firth* v. *Purvis*, 5 T. R. 433.) To make the tender complete and effectual, the defendant should have shown the sheriff's refusal to receive the money; and proved, in the language of the plea, that he was *touts temps prist, et uncore prist;* and bring the money into court. Unless all this is done, the whole proceeding is nullity. (*Rose* v. *Russell & Brown Kirby,* 293. Cowen's Treat. 486, &c. where all the authorities to this point are collected.) Had the sheriff still persisted in selling, the defendant, to save himself, must have bid the the whole amount of the Whiteside judgments. Besides a mere tender, in any view, would have been insufficient. This must have been followed up by a motion, and satisfaction of the judgment upon the record. A mere tender of money never discharges the debt. (Bac. Abr. Tender, (E.) *Walcott* v. *Van Santford,* 17 John. 248, 253.)

The only case which can be relied on against us, is that of *Jackson* v. *Crafts,* (18 John. Rep. 110,) which was the case of a tender to the assignee of a mortgage, to prevent a statute sale. But, in that case, the tender was made to the creditor, and kept good. The land was not, as here, in the custody of the law; and no suit in legal contemplation, was commenced. The whole was *in pais.* The lien was created, and might be discharged by the parties. Such is the rule in relation to a conditional grant of lands. (1 Inst. 207, *a.*)

*J. Crary* and *D. Russell,* contra. The person redeeming upon the statute, must have a lien upon the land at the time. The judgment upon which Law purchased, having been obtained before the statute authorizing a redemption was passed, it does not apply, though the sale was after its passage. (*Dash* v. *Van Kleeck,* 7 John. Rep. 477.) In this view, the title passed to Law absolutely. Beside, the sale on junior judgments, though after the advertisement upon the White side executions passed the title; and the plaintiff must look to the sheriff. (*Sandford* v. *Roosa,* 12 John. Rep. 162.)

The effect of the tender was to take away the lien; though we admit, the debt or duty remained. It became personal

upon Law, who should have had notice that Lansing was assignee, when he came to redeem. But it is enough, that the tender discharged the lien. This is settled by *Jackson* v. *Crafts*, (18 John. 110, 115.) The payment of the money to the sheriff by Lansing, enured to the benefit of Law. Lansing cannot pretend that he was a *bona fide* purchaser of the Whiteside Judgment. The tender was with his knowledge. It was not conditional, and was properly made to the sheriff. He held the executions; and was the proper person to enforce and receive payment. The tender being made, the object of the execution was answered; this not being to enforce a sale of the land, but the payment of the debt. In *Jackson* v. *Crafts*, the tender was to the agent. No matter where the money afterwards remains. It is the tender, not the subsequent disposition of the money, to which the law looks.

*Lansing*, in reply, as to the necessity of keeping the money tendered ready at all times, down to the period of pleading, or giving it in evidence, cited *Horn* v. *Luines*, per *Holt*, C. J. (12 Mod. 354; *Brownlow* v. *Hewley*, (Ld. Raym. 82;) *Giles* v. *Hartis*, (id. 254;) *Horne* v. *Lewen*, (id. 643;) 2 Roll. Abr. 524; *Touts temps prist*, (D).

*Curia*, per WOODWORTH, J. The premises in question were sold on the 14th April, 1821, under a judgment recovered by John Williams, against Gerrit Quackenbush, on the 15th of February, 1806. John Law, one of the defendants, became the purchaser. On the 29th May, 1815, two judgments in favor of John Whiteside against Quackenbush, were docketed; and on the 13th of July, 1822, assigned to the lessor of the plaintiff, who, on the day last mentioned, redeemed the lands sold under the judgment of Williams, in the manner prescribed by the act, and received a deed from the sheriff.

The material question arising in this case is, whether the judgments in favor of Whiteside were, at the time of the redemption, a lien on the land. On the part of the defendants, it appeared that in 1817, executions were issued on the judgments of Whiteside, and also on judgments in favor

Jackson
v
Law.

of other plaintiffs, to the sheriff of Washington county; tha
in May, 1818, the sheriff proceeded to sell the right of Quack-
enbush; and thereupon John Law, being a judgment credi
tor, tendered to the sheriff bank notes, on the Whiteside exe-
cutions, for the purpose of compelling him to sell upon ex-
ecutions issued on junior judgments.   The sheriff, who
was examined as a witness states, that the money was not
counted, but he had no doubt that the quantity was suffi-
cient; that in consequence of this tender, he did not sell on
the executions of Whiteside, but sold the premises on two
junior executions to Jacob Lansing, the lessor.   The case
does not state that the sheriff refused to accept the money
tendered; but I understand that the fact is so.   He suspen-
ded the sale under the executions of Whiteside, but did not
receive payment.   Afterwards, Lansing, having become
the assignee of the judgments, redeemed under them the
land sold by virtue of the judgment of Williams.   There
are a number of other facts in the case, not deemed mate-
rial to the decision of the cause.

By the third section of the act concerning judgments and
executions, (sess. 43, ch. 184,) any creditor, who shall have
a decree in Chancery, or a judgment at law, against a de-
fendant, has a right to redeem.   It seems to me that, at law,
the lien did not cease by reason of the tender.   It is undoubt-
edly the duty of a sheriff to receive the money on a *fieri
facias*, when offered; and if refused, on application to the
court, a summary remedy would be applied, restraining the
sheriff from making a sale, or by directing satisfaction to be
entered on record, on payment to the plaintiff.   No attempt,
however, was made by Law to obtain a discharge of the
judgment, after the tender made to the sheriff.   He cannot,
therefore, claim that the judgment was satisfied; and if it
was not, Lansing had a right to redeem under it.   The doc-
trine of tender is not applicable; for that cannot be made
after an action is commenced; (6 Bac. 452; Bro. Tender,
pl. 9;) and, in cases where a tender is made in season, and
the creditor refuses, the effect is merely to discharge the debt-
or from subsequent interest.   (6 Bac. 458.)   The principal
is never discharged, unless under peculiar circumstances; as
where there was not, after the tender and refusal, any rem-

edy to enforce the payment of the debtor, the performance of the duty. (6 Bac. 156. 1 Inst. 207.) The effect of the tender, in this case, is to bar the damages or interest. To that extent it would have been available, if Law had applied for redress. The debt still, remains due, and the judgment in force. Law never brought the money into court, but still retains it. His omission to claim the interference of the court, has left the plaintiff in possession of a valid judgment, which the statute authorized him to use in the manner he has done. On the question before us, admitting that the tender discharged all subsequent interest, it does not affect the title; for the judgment was a lien until wholly paid. If any part remained due, it continued a lien. If the defendant is subjected to loss by the redemption, it is imputable to his want of vigilance in not following up the tender by an application to this court, where ample redress might have been obtained. I am of opinion that the plaintiff is entitled to judgment.

SAVAGE, Ch. J. dissented.

Judgment for the plaintiff.