WILLIAM TIFFANY, Respondent, v. JOSIAH ST. JOHN, Appellant.

A tender to a sheriff by the judgment debtor of the full amount collectible upon an execution in the hands of the former discharges the lien of the execution upon property levied on by virtue thereof; and in case of a refusal to accept the tender, and a subsequent sale of the property under the execution, an action for conversion will lie.

In such an action it appeared that the judgment upon which the execution was issued was rendered by the Marine Court of New York city, for sixty-seven dollars and forty-four cents. As the sheriff was proceeding to sell property levied upon, plaintiff (the judgment debtor) tendered $120. The sheriff refused to accept, claiming the tender to be insufficient. Plaintiff thereupon forbade the sale, but the sheriff proceeded with it. Defendant (the judgment creditor) was present and within hearing distance at the time of the conversation, and subsequently was heard to converse respecting the tender he bid upon the property. *Held*, that the tender was *prima facie* sufficient in amount; that if defendant was aware of the facts he was liable for the conversion; and that the evidence was sufficient to authorize the submission of that question to the jury.

The provisions of section 243 of the Code, in reference to sheriffs' fees on attachment, only apply to attachments in courts of records. Officers executing attachments issued out of Justices' Courts or the Marine Court of the city of New York have no authority to make charges in addition to their regular fees; these include compensation for caring for property attached.

(Submitted January 12, 1875; decided May term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of the plaintiff, entered upon an order denying a motion for a new trial and directing judgment upon a verdict. (Reported below, 5 Lans., 153.)

This action was brought to recover for the alleged unlawful conversion of a canal boat belonging to the plaintiff.

The defendant justified under a judgment and execution of the Marine Court of the city of New York.

The boat was seized in that city on February 14, 1870, by the sheriff, on an attachment issued from that court. Afterwards, such proceedings were had that the sheriff sold the

boat on an execution issued in favor of the defendant and of another person. The defendant was present and took part in the proceedings, and bid upon the boat at the sale.

Before such sale took place, the plaintiff made, as he claimed, a valid tender to the sheriff, in the presence and hearing of the defendant, of $120 as the full amount due on the execution upon which the sale was being made. The amount of the execution was sixty dollars damages and eight dollars and forty-four cents costs.

The sheriff refused to accept the tender, on the ground that the amount was insufficient.

At the close of the plaintiff's case the defendant moved for a nonsuit. The motion was denied, and the defendant excepted.

There were other exceptions in the case, to which sufficient reference is made in the opinion, wherein is also contained further statements of facts.

The jury rendered a verdict for the plaintiff for $2,640.97. Exceptions were ordered to be heard in the first instance at General Term.

*Beebe, Wilcox & Hobbs* for the appellant. A tender to the sheriff did not discharge the debt or judgment. (*Jackson* v. *Law*, 5 Cow., 252; 9 id., 641.) A tender, to be effectual, must, in general, be made directly to the creditor or to his duly authorized agent. (*Hornby* v. *Cramer*, 12 How., 490; 2 Greenl. on Ev., § 607.) The ruling that the burden of proof on the sufficiency of the tender was shifted to defendant when plaintiff proved he had offered nearly twice the amount of the execution. (2 Greenl. on Ev., § 601; 1 id., § 74; *Green* v. *Waggener*, 2 Hilt., 297; *Costigan* v. *M. and H. R. R. Co.*, 2 Den., 609; *Boyden* v. *Moore*, 5 Mass., 368.) The sheriff was entitled to a reasonable compensation for keeping and protecting the property which is not fixed by law. (Code, § 243; Crocker on Sheriffs, §§ 1094–1097; *Smith* v. *Birdsall*, 9 J. R., 328; *Suprs., etc.,* v. *Briggs*, 2 Den., 41; *Hoyt* v. *Phillips*, 1 Swe., 76.)

*William Tiffany*, respondent, in person.

DWIGHT, C. The only exception available to the defendant in this cause is the motion for a nonsuit at the close of the plaintiff's case. There are some exceptions set forth in the printed case, which appear to have been made to the mere utterances of the judge in the course of the trial. They are not connected with the introduction of evidence, nor with any proposition in the judge's charge, so far as the printed case shows. The rulings appear to have been mere abstract propositions stated in a running conversation between the court and the defendant's counsel. They are not before us in such a form that we can pass upon their correctness.

The motion for a nonsuit was made upon two grounds: One was, that the plaintiff had not proved facts sufficient to constitute a cause of action, having proved that the boat was sold at a sheriff's sale, which must be presumed to have been regular. The other ground was that the plaintiff has not connected the defendant with the alleged conversion.

The facts that appeared at this stage of the cause were substantially as follows:

The plaintiff being the owner of the canal boat in controversy, which was lying on the 14th day of February, 1870, at the foot of Wall street, New York, the sheriff seized it on an attachment. The attachment, which was produced in evidence, purported to issue from the Marine Court under the provisions of the act (chap. 300, Laws of 1831) " to abolish imprisonment for debt," etc., for a debt of sixty dollars and interest from January 4, 1870, arising upon contract.

The boat was detained until March 29, 1870, when, having been advertised for sale by the sheriff, it was sold by him.

At the time of the sale, the defendant St. John and his partner in the towing business (Lord) were present. The sheriff publicly offered the boat for sale " by virtue of an execution issued out of the Marine Court in favor of Hezekiah B. Lord and Josiah St. John."

The plaintiff, as soon as this offer was made, tendered $120 to the sheriff on the execution. The sheriff refused to receive the sum tendered, saying it was not enough, and went on with

the sale. The boat was at first struck off to the defendant St. John, but another person having claimed the bid, it was put up again and sold to him for $525. The sheriff put the purchaser in possession.

On this testimony, the motion for a nonsuit was denied.

The defendant then proceeded with the case, and put in evidence the certificate of the clerk of the Marine Court in the case of *Hezekiah B. Lord et al.* v. *William Tiffany*, containing the complaint, answer, attachment and execution.

The plaintiff, after the defendant rested, offered further testimony to show that when he made the tender to the sheriff he spoke so loudly that any one upon the boat could hear him, and that the sheriff refused to receive the money, in a loud voice, and that he (the plaintiff) then forbade the sale. The defendant was not more than eight feet from him at the time, and from three to six feet from the sheriff, and was afterwards heard to converse respecting the tender. This had always been kept good.

The propriety of a nonsuit must be regarded as though the motion for it had been made at the close of the case, the additional evidence after its denial, furnished by the plaintiff, being taken into account. (*Schenectady Plank-road Co.* v. *Thatcher*, 11 N. Y., 102; *McCotter* v. *Hooker*, 8 id., 497; *Jackson* v. *Leggett*, 7 Wend., 377.)

If the act of the sheriff was unauthorized by law, there was sufficient evidence to go to the jury that the defendant was aware of it, and thus to make him liable for the conversion.

The only point, therefore, which needs to be considered is, whether the proceedings by the sheriff were regular. In other words, did the tender made by the plaintiff discharge the lien of the execution, or in any manner affect the rights of the sheriff to sell upon it?

This question must be solved, first, by considering whether a tender plainly sufficient in amount would affect the sheriff's capacity to sell; and, second, if so, whether there was *prima facie* evidence in the present case to show that the tender was sufficient?

First. It is a general rule of law that where a person holds a lien upon property, a tender by the owner of the property of the amount of the lien will discharge it. In fact, the detention of the goods upon a different and inconsistent ground will be a waiver of the lien. (*Boardman* v. *Sill*, 1 Camp., 410, n; *Winter* v. *Coit*, 7 N. Y., 288; *Weeks* v. *Goode*, 6 C. B. [N. S.], 367.) It is a well-settled rule in the law of pledges that if the money for which the goods are pawned be tendered to the pawnee, and he refuses to receive it, he becomes thereby a wrong-doer, and his special property in the chattel is determined. (*Coggs* v. *Bernard*, 2 Ld. Raym., 909.) It is said, by Comyn, "that by tender of the money the property in the goods is determined, and the pledge ought to be returned; but if the pawnee refuse to restore the pledge upon tender, trover lies against him." (Com. Dig., tit. Mortgage, A, and cases cited.) The principle governing the subject is, that tender is equivalent to payment as to all things which are incidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the thing tendered, but he does lose all collateral benefits or securities. The instantaneous effect is to discharge any collateral lien, as a pledge of goods or a right of distress. (Per COMSTOCK, J., in *Kortright* v. *Cady*, 21 N. Y., 366.) Upon these principles, it has been held that if the debtor tender the debt to the pledgee, and he refuse to deliver up the pledge, he is liable, though it be subsequently lost, or even forcibly taken from him. (Chitty on Con. [11th ed.], 670; *Ratcliff* v. *Davis*, Yelv., 179; Bull, N. P., 72.) This principle was applied to mortgages of real estate in *Kortright* v. *Cady* (*supra*), where it was held that a tender of the debt, either upon or after the law day, extinguishes the mortgage, and leaves the mortgagee only a creditor of the mortgagor.

It is, however, claimed that this doctrine does not apply to the lien of an execution, as that is created by operation of law. This case, however, cannot be distinguished in principle from that of a pledge. In each case, the lien exists as a collateral advantage to the creditor. It is incidental to the debt. In

each case, if the lien is not satisfied, there is a power to sell. Payment will extinguish the one as well as the other. If the theory propounded by COMSTOCK, J., in the case above cited, be correct, and it is believed to be sound, the tender is equivalent to payment, and is as effectual in destroying the lien as in the case of a pledge. A tender will discharge the lien of an attorney. (Stokes on the Lien of Attorneys, 81, 172; *Jones* v. *Tarleton*, 9 M. & W., 675; *Scarfe* v. *Morgan*, 4 id., 280; *Irving* v. *Viana*, 2 Y. &. Jer., 71, 72.) There is, undoubtedly, a stage in a proceeding in an action where property is in the custody of the law, that a tender will not destroy the lien, as that might interfere with the proper disposition of the case. After the action is over, and judgment obtained and execution levied, the case becomes clearly assimilated to that of an ordinary lien, and if tender is made, and not accepted, the lien will be extinguished. This distinction was well settled as far back as the time of Lord COKE, and is clearly stated in the *Six Carpenters' Case* (8 Coke, 146, *a*). The point there discussed was, the effect of a tender in the case of a distress for rent, or of cattle doing damage — an instance of a lien created by the act of the law. COKE considers the distinction between a tender made upon the land before distress, after the distress and before impounding, after impounding and before the determination of the litigation, and contrasts these with a tender made after the law has determined the rights of the parties. He says : " Note, reader, this difference, that tender upon the land before the distress makes the distress tortious; tender after the distress, and before the impounding, makes the detainer, and not the taking, wrongful; tender after the impounding makes neither the one nor the other wrongful, for then it comes too late, because then the cause is put to the trial of the law, to be there determined. But after the law has determined it, and the avowant has return irreplevisable, yet if the plaintiff makes him a sufficient tender, he may have an action of *detinue* for the detainer after, or he may, upon satisfaction made in court, have a writ for the redelivery of his goods." He adds : "And therewith agree all the books,

and *Pilkington's Case*, in the fifth part of my reports (fol. 76), and so all the books which, *prima facie*, seem to disagree are, upon full and pregnant reason, well reconciled and agreed."

There is here a clear statement of the principle applicable to the case at bar. Here the law has already determined the right which has become final in analogy to the "return irreplevisable" of Lord COKE, and the tender having been made and refused, if it were sufficient in amount, an action of replevin in the *detinet* will lie in analogy to the action of *detinue* referred to by him. It should also be observed that Lord COKE's rule provides that the owner of goods has his election to make an application to the court for relief.

The defendant cites, in opposition to these views, the case of *Jackson* v. *Law* (5 Cow., 248; S. C., 9 id., 641). That case, however, has no bearing upon the present controversy. The point there decided was, that a tender of money due upon a judgment, by a junior judgment creditor, did not discharge it, nor take away the lien of the senior judgment creditor upon lands, but that the latter might still redeem upon his judgment within the terms of the statute applicable to that subject.

The ground of this decision briefly was, that a judgment being a debt of record is not discharged by a tender, as it is, in no case, the effect of a tender to discharge the debt. The judgment could only be extinguished by actual satisfaction. As long as it remained in force it must, by its very nature, as prescribed by statute, be a lien on the land. If its existence continued it could not be deprived of its ordinary and usual characteristics. The case is very different with a pledge or mortgage, or lien of any kind collateral to the debt. To this class of collateral liens an execution belongs, and on general principles a tender destroys it. Even in a case of a judgment a tender may have such an effect as to make it inequitable to enforce the lien, and a court of equity may set aside a sale under it as irregular and void. (*Mason* v. *Sudam*, 2 J. Ch., 172.) It is not necessary in this class of cases, where the effect of a tender is to destroy the lien, to keep the tender good or to pay the money into court. The tender having discharged the lien, its entire

result has been accomplished for the purposes of the present action. (*Kortright* v. *Cady, supra.*)

Second. The tender in this case was *prima facie* sufficient in amount. The judgment in the Marine Court was for sixty dollars damages and eight dollars and forty-four cents costs. The tender was $120, and was declined on the ground of insufficiency. At the trial the defendant offered no evidence to show any reason why more than the face of the judgment was due from the plaintiff. He did not show that the sheriff had been put to any expense or that he had put a man in possession, or any fact whatever from which a duty on the part of the plaintiff to pay could possibly be inferred. The defendant refers for his right to make a charge to section 243 of the Code of Procedure. That section only refers to proceedings under attachment in courts of record, and is not applicable to proceedings in the Marine Court. The attachment and judgment took place by virtue of chapter 300, Laws of 1831, from the twenty-ninth to the forty-seventh sections, inclusive. These are the sections applicable to Courts of Justices of the Peace. I can find no statutory authority giving the officers of these courts power to make charges additional to their regular fees. If they have any claim beyond these it must be vested upon some implied obligation of the debtor to pay. The facts from which such an obligation was to be inferred would need to be proved.

It is true that a constable is responsible for the safety of the property he attaches, and is considered as a bailee and accountable for ordinary negligence. He is accordingly to provide for its safe-keeping. (Cowen on Attachment, 93.) Still the law has given him no specific allowance for the service, assuming that the compensation is included in his ordinary fees. These fees, as prescribed in the Revised Statutes and as collected in Crocker on Sheriffs (sections 1170, 1181), fall far short of the amount tendered.

I think that, under the circumstances, the plaintiff made a *prima facie* case, and that his tender was sufficient on the hypothesis that the sheriff was the defendant's agent. There

was also evidence of that fact, as the tender was made in the presence and hearing of the defendant, and the refusal was made by the sheriff without his objection. It was not erroneous to refuse the motion for a nonsuit, as, if the defendant ratified the act, he must be considered as having refused the tender and was a co-trespasser with the sheriff. It is laid down in Crocker on Sheriffs (§ 420, ed. 1871) that where money is tendered to the sheriff upon an execution in his hands, it is his duty to receive it and to forbear to levy and sell ; and if he does levy and sell, after a valid tender of the full amount of the debt and costs, he is a trespasser. The matter was properly submitted to the jury to determine the knowledge and intent of the plaintiff as well as the other facts in the case.

There was no error in the disposition of the cause in the court below and the judgment should be affirmed.

All concur.

Judgment affirmed.