# LADD & TILTON *v.* MASON, ET AL.

JUDGMENTS, ORDERS AND DECREES MAY BE VACATED.—Every court possesses the inherent power to vacate entries, in its record of judgments, decrees or orders, rendered or made without jurisdiction, either during the term at which the entries are made, or at any subsequent term.

DEMURRER—WILL NOT LIE TO IMPERFECT DESCRIPTION OF LAND. — A demurrer will not lie to a complaint, in a foreclosure suit, on the ground of insufficiency of description of the mortgaged premises, where such description purports to refer to natural objects, not judicially cognizable, and apparently includes a definite tract of land.

TENDER IN WRITING.—An "offer in writing," under sec. 816 of the code, to pay a definite sum of money, or to deliver a particular thing, takes the place of the actual production and proffer of the money to be paid, or thing to be delivered, but does not dispense with readiness and ability on the part of the person making the offer, to pay or deliver, at the time the offer is made.

IDEM—BURDEN OF PROOF.—The burden of proof, in establishing such readiness and ability when put in issue, is on the party claiming the benefit of the tender.

FORECLOSURE SUIT—MORTGAGOR ENTITLED TO ANSWER CO-DEFENDANTS.—A mortgagor, or his successor in interest, made a defendant in the suit to foreclose, is entitled to answer the affirmative matter set up in the respective answers of his co-defendants, showing liens in their favor upon the mortgaged property, and to have the same determined, in the original suit. As to such matter his co-defendants are to be deemed plaintiffs, and their answers complaints.

IDEM.—No order of the court that the defendants interplead, is necessary in such cases, and it is error in the court to disregard such an answer when seasonably filed.

IDEM.—Misapprehension on the part of some of the defendants as to the correct practice in such cases, preventing them from properly presenting the merits of their claims upon the record; *Held,* Under the peculiar circumstances, to justify remanding the case after reversal for a new trial in the lower court upon issues properly framed.

APPEAL from Multnomah County.

*O. P. Mason,* for appellants.

*J. W. Whalley,* for respondents.

Opinion by WATSON, C. J.:

This suit was brought in the circuit court for Multnomah county by Ladd & Tilton against Geo. W. Johnson and M. E. Johnson, his wife, DeLashmutt & Oatman, and several other parties, to foreclose a mortgage given by Johnson and wife to Ladd & Tilton, to secure the payment of a certain promissory note, dated March 31, 1876, for the sum of six hundred dollars, executed by Johnson to Ladd & Tilton as agents. The mortgage was executed contemporaneously with the note and contained the following description of the property intended to be mortgaged:

"Situate, lying and being in Multnomah county, state of Oregon, and being the undivided half of the following land, to-wit: Beginning on the north line of Thos. Carter's land claim, at the northeast corner of the John Kenneth claim, thence running south twenty-nine chains to the middle of King's creek, in a northerly direction, to A. N. King's land claim; thence westerly, leaving the creek, to the place of beginning—containing twenty-two acres, more or less—less a lot fifty (50) feet by one hundred (100) feet, deeded to a Mr. Zistellins by Carter, which last named lot is thus described," &c.

The complaint, filed January 4, 1877, alleges in respect to DeLashmutt & Oatman that they "have or claim some interest in, or lien on said mortgaged premises, accrued since the lien of plaintiffs' mortgage." DeLashmutt & Oatman answered admitting the priority of Ladd & Tilton's mortgage lien, setting forth the facts to show a subsequent mortgage lien on the same premises, in their own favor, and asking that any surplus after satisfying the amount due on the prior mortgage of Ladd & Tilton, be applied towards the payment of the debts secured by their subsequent lien on the premises.

Only one of the defendants, Elizabeth Johnson, appeared

in the circuit court and defended against the foreclosure of Ladd & Tilton's mortgage.    She was represented in such suit by her attorney, O. P. Mason, one of the appellants, and then as now the husband of Mary Mason, his co-appellant.    On June 19, 1877, such proceedings had been taken in the cause that a decree was rendered foreclosing the Ladd & Tilton mortgage, and directing a sale of the mortgaged property, and the application of the proceeds.    On June 26, 1879, Ladd & Tilton filed a motion, supported by affidavits, for an order vacating said decree, and for leave to file a supplemental complaint making the appellants, Mary and O. P. Mason, defendants, on the ground that intervening the execution of their mortgage and the commencement of the foreclosure suit, said Mary had obtained the legal title to the mortgaged premises, which fact was unknown to them until after the rendition and entry of said decree.    The court below granted the motion, the supplemental complaint was filed and summons served on the appellants.    They thereupon appeared and moved the court, upon affidavits accompanying their motion, to vacate the order setting aside the previous decree and allowing them to be made parties; but their motion was overruled.    They next demurred to the complaint, but their demurrer was overruled also.    They then answered, denying every material allegation in the complaint, and as separate defenses alleging certain facts as constituting tenders of the amount due upon the note secured by the Ladd & Tilton mortgage, previous to their having been made parties to the suit.    They also filed an answer to the affirmative allegations in the answer of De-Lashmutt & Oatman, denying them, and as a separate defense setting up new matter in avoidance, without having obtained any order from the court to interplead.

Afterwards, H. W. Prettyman was allowed, upon his own

application, supported by affidavit showing that he had endorsed one of the notes secured by the DeLashmutt & Oatman mortgage for accommodation merely, and had been compelled to pay the same, and was therefore entitled to the benefit of the mortgage security, to become a party defendant.   DeLashmutt & Oatman filed no reply to the answer of the appellants, but the latter filed a demurrer to the answer interposed by H. W. Prettyman.   The cause was, in this shape, referred, and upon the evidence reported by the referee, and the pleadings, the court below decreed the foreclosure of the Ladd & Tilton mortgage and the sale of the mortgaged premises, and the distribution of the proceeds as follows:  1, To the payment of costs of suit and expenses of sale;  2, To the payment of the amount secured by the Ladd & Tilton mortgage;  3, To the satisfaction of the amounts due DeLashmutt & Oatman and H. W. Prettyman respectively on the notes secured by their mortgage. From this decree the appeal has been taken.

The errors assigned and points discussed in the brief of the appellants are quite numerous, but we shall confine our attention in this place to such as we deem of essential importance in the determination of the case.   The order of the court below, of June 26, 1879, vacating the previous decree of June 19, 1877, and allowing appellants to be made parties defendant by a supplemental complaint, seems to us open to none of the objections urged by the appellants. The rule of law which prohibits courts from revising, changing, or reversing their own decisions, after the term at which they are rendered has expired, has no application to a case like the present.   It applies only where the court has jurisdiction and the cause is heard upon its merits.   In the present instance, as Mary Mason had obtained the legal title in the mortgaged property previous to the commence-

ment of the foreclosure suit, the decree of foreclosure and sale entered before she was made a party was simply a nullity, the court having no jurisdiction to render it. The inherent power of the court to set aside and vacate such an entry, made without jurisdiction, at any time afterwards, whether at the same term it is made, or any subsequent term, seems hardly to admit of a serious doubt. Judgments, decrees or orders made without jurisdiction are not more binding upon the courts that enter them than upon persons sought to be affected by them. Not only may they be vacated to subserve the ends of justice between parties litigant, but it would seem that they might be set aside by the courts upon their own motion, by virtue of their inherent power to correct their own records and free them from extraneous matter. (Civil code, sec. 100; Freeman on Judgments, secs. 98, 100, 107, 108; *State Bank, &c.,* v. *Abbott, et al.,* 20 Wis., 599.)

The affidavits filed by Ladd & Tilton, in support of their motion to vacate, disclosed a state of facts fully justifying the interposition of the court in the exercise of this power. They caused the record to be searched in contemplation of bringing the suit to foreclose their mortgage, but the sheriff's deed for the premises to Mary Mason had not been registered. Although executed December 21, 1876, it was not recorded until January 11, 1877, seven days after the commencement of the foreclosure suit. The execution on which the land had been sold had been returned and docketed, but the docket entry had not been indexed, and hence escaped the searcher's notice. And neither Ladd & Tilton nor their agents or attorneys had any notice of such conveyance until after the entry of the decree of June 19, 1877. There had been no sale nor attempt to sell the premises under this void decree, and we think the course pursued to get it va-

cated and bring in the appellants, as holders of the legal title, was the correct practice. (*State Bank, &c.,* v. *Abbott, et al., supra.*)

The question raised by the demurrer to the complaint is as to the sufficiency of the description of the mortgaged property. Appellants contend that it is fatally uncertain and indefinite. Evidently the word " thence," or words of equivalent import, must be supplied immediately before the words, " in a northerly direction," in the description, and this being done the description is certainly good on its face. The natural objects referred to, and the courses and distances do then apparently, at least, describe a definite tract of land in Multnomah county, Oregon. If there is any ambiguity in the description it certainly does not appear upon the face of the record itself, as set forth in the complaint, and cannot be reached by demurrer.

It is alleged in the answer of the appellants, and admitted in the reply of Ladd & Tilton, that prior to the vacation of the first decree and the bringing in of the appellants as parties to the suit, under the order of court, the appellants caused a written offer to pay the amount of principal and interest due on the note secured by the Ladd & Tilton mortgage, to be served upon W. S. Ladd, one of said firm, by the sheriff of Multnomah county, Oregon. This answer contains this further allegation, which is put in issue by the reply: "That at said time defendants had the said money ready as therein specified, and were willing to pay the same as therein set forth, and the said plaintiff, W. S. Ladd, declined and refused to accept the said offer, and has ever since declined and refused to accept the said offer and tender in writing, and to receive the said money, and still refuses to do so." No evidence upon this issue was introduced by either party. Appellants claim that an " offer in writ-

ing," under sec. 816 of the civil code, is admitted by these pleadings. The section reads as follows: " An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property." This provision seems by no means common in the statutes of the different states, nor to have been elucidated to any considerable extent by judicial decision. Indeed we have only been able to discover it in the statutes of a single state besides our own—those of Iowa—and to find a single reported case where it has come to judicial examination. The Iowa statute is, in substance, identical with our own, and no doubt the original from which ours was derived. Under it the supreme court of Iowa have held that the offer in writing therein provided for might be sent by mail to the postoffice address of the creditor in another state. (*Crawford* v. *Paine*, 19 Iowa, 178–9.) But without dwelling upon the proper mode of procedure under this provision, or expressing any opinion of our own in regard to the broad construction put upon it in the Iowa case, we think it perfectly safe to hold that while the offer in writing, under the statute, is, if not accepted, equivalent to the actual production and tender of money to be paid or other thing to be delivered, it does not dispense with the readiness and ability on the part of. the person making the offer to pay or deliver at the time the offer is made. Surely the justice and good sense of the legislature should not be impugned by such a construction of this provision as would place its framers in the position of having intended to provide a mode whereby a party might make a valid tender if his offer should not be accepted, without the readiness or ability to make it good, in the event of its acceptance. The legislature cannot, it seems to

us, by any such doubtful construction, be held to have sanctioned and authorized what otherwise would be deemed a plain and palpable fraud. (*Fisk* v. *Holden*, 17 Tex., 408; *Fuller* v. *Little*, 7 N. H., 535.) In the case at bar, appellants allege such readiness and ability on their part, which is denied; and no evidence upon this issue has been introduced. Who must fail? Evidently the appellants, for on them the burden of proof rested. These facts were directly and distinctly in issue and it devolved upon the appellants to prove them. (*Pulsifer* v. *Shepard*, 36 Ill., 513.) Consequently the defense founded upon the offer in writing, in our judgment, fails. Neither is the allegation in the answer of the appellants of an actual tender of the amount due on the note sustained by a preponderance of the evidence. The testimony of E. Quackenbush and the appellant, O. P. Mason, the only witnesses examined in regard to it, is in direct conflict, while there is nothing besides in the record to enable the court to judge between them. The burden of proof resting upon the appellants here, as in the preceding instance, in this evenly balanced state of the evidence, they must fail as to this defense also.

The only remaining question which we deem it necessary to consider, relates to the action of the court below in reference to the pleadings of the appellants to the respective answers of DeLashmutt & Oatman and H. W. Prettyman. The court seems to have disregarded them altogether, as unauthorized and of no legal effect whatever. This, we conceive, was erroneous. Our statute expressly provides for making subsequent lien-holders parties defendant in a foreclosure suit; also prior lien-holders, at the option of the plaintiff, or by order of the court. (Sec. 411, Civil Code.) Also for a decree foreclosing the liens held by such parties, and the distribution of the proceeds of the sale of the mort-

gaged property among them, according to priority. (Sec. 412, Id.) It is plain from these provisions that the mortgagor, or his grantee of the equity of redemption, must be allowed an opportunity to contest the claims of such of his co-defendants as set up liens in their answers against the mortgaged property, in the foreclosure suit itself, or he will be precluded from asserting his rights as against them altogether. The practice in such cases has not been provided for by statute, nor are we aware of any adjudication upon it in this state. The want of such statutory provision in regard to the mode of procedure, is not, however, an insuperable barrier to the exercise of the jurisdiction so clearly conferred upon the courts by the sections of the code last cited.

Sec. 911 of the civil code provides: "When jurisdiction is, by the organic law of this state, or by this code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

It is probable that even without this express legislative authorization, the courts would feel justified in adopting suitable modes of proceeding in such cases, and the highest courts in some of our sister states, at least, have not hesitated to so declare. (*Meredith* v. *Lockey*, 16 Ind., 1; *Dice* v. *Morris*, 32 Id., 278; *Tucker, et al.* v. *St. Louis Life Ins. Co., et al.*, 63 Mo., 588.)

So far as the answers of his co-defendants attempt to set up claims against the mortgaged property, they are, in substance and effect, complaints against the mortgagor or his grantee defendant in the foreclosure suit, and should be so considered by the court. (*Meredith* v. *Lockey*, *supra*.) No

order to interplead is necessary. The right to do so would seem to follow absolutely from the very fact that the statute itself requires such persons to be made defendants in the suit, and authorizes the determination of their rights therein by the court. Surely parties thus situated should not be called upon to ask leave of the court to assert their legal rights. In respect to the time of filing pleadings among co-defendants in such cases, it would seem most expedient to consider the answer of the defendant setting up a claim against the mortgaged property, as the complaint or first pleading, and proceed afterward in analogy with existing statutory provisions for filing pleadings subsequent to the complaint. And if such answers are complaints, in fact, we do not perceive how any different rule can well be adopted. Our conclusion is that the course which appellants attempted to pursue in regard to the respective answers of DeLashmutt & Oatman and H. W. Prettyman, was the correct practice, and that the circuit court erred in disregarding their pleadings to such answers, and in treating them as nullities, and for this reason so much of the decree as concerns the determination of the rights between the defendants must be reversed.

But as it is apparent that the defendants have through misapprehension as to the correct practice in such cases, failed to present their respective claims and defenses upon the record, in such a manner that their merits can be fairly investigated, and to offer any evidence in their support, we deem it both competent and proper after reversing the decree as to them, to remand the cause to the lower court for a new trial between them upon issues to be framed, and evidence introduced as that court shall direct. (*Speyer* v. *Ihmals*, 21 Cal., 281.)

The decree of the court below in favor of Ladd & Tilton

is affirmed, with costs. Its provisions in favor of DeLash-mutt & Oatman and H. W. Prettyman are reversed and set aside, and this cause remanded for further proceedings in accordance with the views contained in the foregoing opinion. LORD, J., concurring.

### DISSENTING OPINION.

By WALDO, J.

At common law a tender was the production and manuel offer of the money. (*Bakeman* v. *Pooler*, 15 Wend., 638.) But a refusal to receive the money dispensed with its actual production. (*Ball* v. *Stanly*, 5 Yerg., 200; *Hazard* v. *Loring*, 10 Cushing, 269.) The refusal to receive is grounded on the assumption that the money is at hand ready to be produced. Therefore, he who pleads a tender, and proves a waiver of the actual production of the money, must yet show that the money was at hand ready to be pro-duced. However, a less strict rule is laid down in *Holmes* v. *Holmes*, 9 N. Y., 525.

But our statute steps in and says that an offer in writing to pay money is equivalent to an actual production and tender. Therefore, when, under the statute, a party proves an offer in writing, it is precisely the same in legal effect as if he had proven an actual production and offer of the money. This seems the plain reading of the statute, and the inference to be drawn from the authorities. (*Bartel* v. *Lope*, 6 Or., 327; *Shugart* v. *Pattee*, 37 Iowa, 422, 425.)

The good faith of such an offer is presumed, which includes the ability to make the offer good. If a want of good faith is averred it must be proved by the party setting it up. In *Brewer* v. *Fleming*, 51 Penn. St., 107, 112, 113, a tender was made the defendant of a sum of money called by the plaintiff $2,660, which the defendant refused to re-

ceive, but made no objection to the quantity. It was held that the defendant could not afterwards allege that the sum was insufficient; or, if so, that the burden of proof was upon him. Fraud would vitiate the tender, but this must be proved by the party denying the tender. (*Nelson* v. *Robson*, 17 Minn., 291; *Hayward* v. *Munger*, 14 Iowa, 516.)

To apply the language of Mr. Justice Washington, in *Blight* v. *Oakley*, Peters' C. C., 24—the respondents, having declined to accept the tender, cannot be heard now to say that the appellant could not have performed his offer. The tender destroyed the lien, as the authorities cited by the appellant show. See, also, *Tiffany* v. *St. John*, 65 N. Y., 314.