MURPHY *et al. v.* GOLD & STOCK TEL. CO.

(*City Court of New York, Trial Term.* February 7, 1889.)

1. TENDER—WHAT AMOUNTS TO—CHECKS.
    The debtor of a partnership tendered his check for the amount due payable to the firm. The partner to whom the check was tendered refused to accept it, unless it was made payable to his individual order. The debtor would not make the alteration, and immediately destroyed the check. *Held* that, as the creditor was under no obligation to receive a check of any description, he had a right to dictate the form of the check, and that no legal tender had been made.

**2. SAME—EFFECT—PAYMENT INTO COURT.**

Where a debtor, after a tender to his creditor, which is declined, mingles the amount tendered with his other moneys, and uses it in his business, he must afterwards, on a tender and payment of money into court in an action brought by the creditor, also pay interest up to that time.

**3. SAME—ACCEPTANCE—OBJECTION TO AMOUNT—WAIVER.**

Where, after action is brought, a tender is made, and the money deposited in court, plaintiff has a right to take the money out of court, and an objection to the amount of the tender is not thereby waived.

**4. SAME—INSUFFICIENT TENDER—JUDGMENT.**

Where a tender of money made and deposited in court after action brought is found to be insufficient in amount, a judgment will be directed for plaintiff for the entire amount claimed by him, and the amount tendered will be credited on the judgment after its entry.

The plaintiffs, composing the firm of Murphy & Power, deposited the sum of $50 with the defendant as a part of a business transaction. Subsequently they were notified that their deposit would be surrendered to them, and on June 3, 1886, Mr. Murphy went to defendant's office and demanded the return of the deposit, with interest. A check for $59.69, payable to the order of Murphy & Power, was refused; Mr. Murphy requesting that the check be made payable to his own order. The defendant declined to make the alteration, and destroyed the check. Afterwards, on June 10, 1886, the present action was commenced to recover the $50 and interest; and on July 21, 1886, defendant paid into court the sum of $60.12. By way of defense defendant pleaded the tender made before suit brought, followed by the payment into court of the sum mentioned. The plaintiffs took the sum deposited for their benefit, but continued to prosecute the action; claiming that the offer of the check was not a legal tender, and that the sum paid into court was insufficient in amount.

*Weekes & Forster*, for plaintiffs.     *Dillon & Swayne*, for defendant.

McADAM, C. J.  The defendant urges that the objection that a check is not legal tender was waived by the plaintiffs, as it was not refused by them on that ground, and that the plaintiffs in like manner assented to the correctness of the amount offered.  *Qui tacet consentiri videtur;* and cites *Duffy* v. *O'Donovan*, 46 N. Y. 223, to sustain the proposition.  There is hardly any need of an authority holding that a party who rejects an offer or tender upon one or more specific grounds of objection cannot afterwards raise another, which might have been obviated if it had been made at the proper time, for the rule is now elementary.  The difficulty is to apply the principle stated to the peculiar facts of this case which limit its application.  True, Mr. Murphy did not object to the insufficiency of the amount offered, and is in this respect concluded from objecting now.  He, however, specifically declined to take the check the defendant offered, and said he would take none unless made to his individual order, and the defendant declined to give any except in the form offered.  As Mr. Murphy was under no obligation to receive a check of any description against his will, it is immaterial whether the form of check he suggested or that which the defendant proposed to give him was more appropriate for the transaction at hand.  When it was apparent that the parties could not agree upon checks as a substitute for money, the defendant must have known that it was bound to pursue the next and only other method of making a tender, which was by an offer of the money, which Mr. Murphy would doubtless have accepted. If it was determined to pay him by check only, it knew that Murphy had the right to determine whose check, and what form of check, he would take.  It was optional with him, and he had the sole right of choice without dictation.  Expressing willingness to take a particular kind of check cannot be tortured or construed into implying a consent to take something different, particularly in the face of his avowal that he would take no other kind of check.  A tender, to be effectual, must put the party re-

fusing to accept in the wrong, so that whatever loss is to follow falls upon him. The tender attempted to be proved in this case was not of that character. It is clear, therefore, that the abortive offer made by the defendant did not amount to a legal tender of the debt. Assuming, for the moment, that the defendant is right in claiming that Murphy, by his conduct, is to be held to have impliedly consented that the particular check offered by the defendant be regarded as the representative of money, for the purpose of the tender, we meet with another difficulty. So considered, it became his property, theoretically, at least; and the defendant could not voluntarily destroy the instrument afterwards without discharging, at the same time, the consent that made it "money" for the purpose of the transaction.

This leads us to the second objection to the alleged tender, which is that, even if Murphy erred in declining to accept the check, it should, in order to keep the tender good, have been preserved, and afterwards deposited in court subject to the plaintiffs' order. *Bank* v. *Koehler*, 1 City Ct. R. 264; *Becker* v. *Boon*, 61 N. Y. 317. It was, theoretically at least, an appropriation of so much of the defendant's money to the plaintiffs' use. This condition of things should have continued, that the plaintiffs might have their *locus pœnitentiæ*. The defendant, however, effectually revoked the application by destroying the check, so that matters were put back to where they were before the check was drawn. The identical money, or the check, as its substitute, should have been preserved and brought into court, and not mingled with other money of the debtor, or used in its business. *Roosevelt* v. *Bank*, 45 Barb. 579; *Bissell* v. *Hayward*, 96 U. S. 587. The object of a tender before suit brought is to stop the running of interest, and to prevent costs, (*Jackson* v. *Law*, 5 Cow. 248; *Wolcott* v. *Van Santvoord*, 17 Johns. 253; *Manny* v. *Harris*, 2 Johns. 24; *Raymond* v. *Bearnard*, 12 Johns. 274;) and to accomplish this result the debtor should regard the money or thing tendered as the property of the creditor, ready at all times to be surrendered to him. The defendant, on the contrary, treated the check tendered as its own, destroyed it at pleasure, and left the moneys in the bank on which it was drawn subject to every other call of its business. The subsequent deposit in court, even if otherwise sufficient, should, in consequence of the destruction of the check, have at least been accompanied by the interest up to the time the deposit was made, for the defendant had the unrestrained use of the money up to that time, Grah. Pr. (2d Ed.) 534; citing *Kidd* v. *Walker*, 2 Barn. & Adol. 705, 1 Dowl. 331. The amount paid into court was $60.12, when it should have been $60.82, being insufficient by 70 cents. The money deposited became the property of the plaintiffs, and they had the right to take it out of court, (*Bank* v. *Koehler* and *Becker* v. *Boon, supra,*) even though they had been nonsuited afterwards, or a verdict or judgment had passed against them, (2 Cow. Treat. § 1180.) The plaintiffs waived nothing by taking the money out of court, and admitted nothing except that it had been deposited in proper form, leaving the question of the sufficiency of the amount to be determined as the issue in the action.

For the reasons stated, the plaintiffs are entitled to judgment, and the only point remaining to be considered is whether the amount is to be $60.82, or that amount less the $60.12 deposited, to-wit, 70 cents. The practice is to direct judgment for the whole amount of the claim, so as to preserve the plaintiffs' right to costs, and to credit the deposit on account of the judgment after it is entered. *Dakin* v. *Denning*, 7 Hill, 30. If the tender had been found sufficient, judgment would have gone for the defendant, and the plaintiffs would have taken the money tendered for their claim. *Becker* v. *Boon*, 61 N. Y. 332; *Dakin* v. *Denning, supra*. Judgment will therefore be directed in favor of the plaintiffs for $60.82, and, after the entry thereof, the plaintiffs must credit the defendant thereon with the sum deposited.