LINCOLN SAVINGS BANK v. ROBERT EWING, Receiver.

1. MORTGAGOR AND MORTGAGEE. *Title to property conveyed.* In this State the legal title to the property conveyed in trust or mortgage passes at once to the grantee, and he is entitled to the immediate possession unless it is otherwise provided in the deed.

2. SAME. *Chancery pleadings and practice. Judgment creditor.* A mortgagee may file a bill *quia timet,* in a proper case, against a judgment creditor of the mortgagor to prevent a cloud upon the title of the mortgaged property.

3. SAME. *Mortgage. Badge of fraud.* The fact that some of the property included in a mortgage was consumable in its use, and was retained by the mortgagor, would, in the absence of an express reservation in the deed of the possession and use in favor of the grantor, be only a badge of fraud as matter of fact, not law.

4. MORTGAGE. *Corporation may take and hold as mortgagee.* A corporation may take and hold estates 'as a trustee or mortgagee, and execute trusts in which it has an interest within the scope of its business, and a failure or inability to comply with the provisions of the Code, sec. 1974, would not affect the validity of the deed or the title vested.

5. LIEN. *Judgment. Supersedeas.* A *supersedeas* of an execution or an injunction against the enforcement of a judgment will, under the Code, sec. 2983, keep alive the lien of the judgment, notwithstanding irregularities or omissions in the execution actually issued.

6. SAME. *Rendition of a new judgment.* The affirmance by this court of a judgment at law brought up by appeal in error or writ of error, by the rendition of a new judgment, or the rendition of a new judgment upon dismissing a *supersedeas* will not affect the statutory lien.

7. MORTGAGE. *Beneficiaries. Judgment creditor. Diligence.* A judgment creditor and the beneficiaries under a trust assignment made by the common debtor, stand in no fiduciary relation to each other, and their rights must turn upon diligence and strict law.

8. TENDER. *Not a satisfaction of judgment or discharge of lien.* A tender by a judgment debtor to the judgment creditor of the full amount of the judgment debt, in a currency which the creditor is required

by law to receive, is not a satisfaction of the judgment, or a dis. charge of the judgment lien. The remedy of the debtor, if a tender be refused, is to apply to the court to restrain the sale under execution, and enter satisfaction of the judgment.

9. SAME. *Mortgage. Mortgage lien or title.* A tender of a mortgage debt alone without more will not release the mortgage lien or title.

### FROM LINCOLN.

Appeal from the Chancery Court at Fayetteville. J. W. BURTON, Ch.

HOLMAN & HOLMAN for complainant.

J. A. WARDER for defendant.

COOPER, J., delivered the opinion of the court.

Bill by a mortgagee to remove a cloud from the title of the mortgaged land by a judgment lien claimed by the defendant. The chancellor granted the relief sought, and the Referees have reported in favor of affirmance. The exceptions open the whole case.

On October 25, 1876, D. M. Perkins conveyed the land in controversy, with other property to the Lincoln Savings Bank in mortgage to secure certain specified debts, conditioned to be void if the mortgagor should pay off the debts on or before the 25th of October, 1878, and with a power of sale in the mortgagee in case of default. The conveyance includes a large and valuable tract of land of over 800 acres, a number of horses, mules, cattle and hogs, and 150 barrels of corn raised on the land that year. The possession and use of the property are not reserved to the grantor by the terms of the deed. But the

deed contains this clause: "If any time before the 25th of October, 1878, it should be thought best from any cause to sell any of said property, said bank, through its agents, officers or attorneys, is authorized and hereby empowered so to do, first getting my consent to do the same."

The bill was filed August 25, 1878, by the Lincoln Savings Bank, upon the title and interest acquired under the foregoing mortgage to the tract of land therein mentioned, for the purpose of enjoining the defendant, who is a judgment creditor of D. M. Perkins, from selling the land by virtue of an execution on his judgment, upon the ground that the sale would be a cloud upon complainant's title. The defendant demurred to the bill, but the demurrer was overruled. It is now insisted that the demurrer should have been sustained because the complainant, as a mortgagee, cannot file a bill to remove a cloud from the title of the mortgaged land, and because the mortgage deed "is void upon its face."

The first of these grounds is based upon the assumption that a mortgagee before condition broken has no legal estate in the land, and, therefore, has no claim to the aid of the court to remove a cloud from the title. For this position a large number of decisions of the courts of our sister States is cited, and a still larger number might easily have been adduced. But in this State it has been invariably held that the legal title to the property conveyed vests in the mortgagee, and he is entitled to the immediate possession, unless the mortgage otherwise provides: *Maney* v. *Kil-*

*lough*, 7 Yer., 440; *Henshaw* v. *Wells*, 9 Hum., 568; *Vance* v. *Johnson*, 10 Hum., 214. And the legal title being in the trustee or mortgagee, he may file a bill to have a receiver appointed before default for the protection of the property: *Bramley* v. *Tyree*, 1 Lea, 531; *Hamilton* v. *Wynne*, 2 Leg. Rep., 287. He may go into equity in order to settle conflicting rights to the property which affect its value: *Carpenter* v. *Huddleston*, 7 Hum., 452; *Peck* v. *Peck*, 9 Yer., 301. And, like a vendee or other person having the legal title, he may file a bill *quia timet*, in a proper case, against a judgment creditor of the mortgagor to prevent a cloud upon the title: *Merriman* v. *Polk*, 5 Heis., 717. The jurisdiction of equity to aid a creditor in removing obstacles in the way of a sale of the debtor's property, so as to prevent a sacrifice, is beyond question: *Kerr* v. *Kerr*, 3 Lea, 224.

The contention that the mortgage deed is void upon its face is based upon the fact that it undertakes to convey corn which is consumable in its use. If, in addition, there had been a reservation in favor of the grantor of the possession and use of the property conveyed, that would have rendered the mortgage fraudulent in law: *Trabue* v. *Willis*, Meigs, 584; *Wade* v. *Green*, 3 Hum., 554. In the absence of such a reservation, the circumstance that some of the property conveyed was consumable in the use and was retained by the grantor would be only a strong badge of fraud as matter of fact, not law: *Darwin* v. *Handley*, 3 Yer., 502; *Simpson* v. *Mitchell*, 8 Yer., 417; *Masson* v. *Anderson*, 3 Baxt., 290, 308.

It is urged in argument that the complainant, being a corporation, is incapable of taking to itself a mortgage or trust conveyance, because unable to comply with the provisions of the Code, sec. 1974, by taking the required oath before proceeding to execute the trust. But a corporation may take and hold estates as a trustee or mortgagee, and execute trusts in which it has an interest within the scope of its business: Perry on Trusts, secs. 42, 43. And a failure or inability to comply with the provisions of the statute would not affect the validity of the deed, or divest the title vested by it: *Vance* v. *Smith*, 2 Heis., 343; *Young* v. *Cardwell*, 6 Lea, 171.

The merits of the case turn upon the effect of certain facts on the lien of the defendant's judgment. On November 16, 1871, Samuel Watson, as trustee of the Bank of Tennessee, recovered a judgment in the circuit court of Lincoln county, against D. M. Perkins and Cornelius Allen, for $14,509.58. Perkins alone appealed in error from this judgment. On March 5, 1873, the judgment was affirmed by this court, and judgment rendered in favor of Watson for the debt and interest against Perkins, and his sureties of appeal, Cornelius Allen and W. H. Moore. Execution issued on this judgment at once, and on the 19th of the same month Perkins caused to be tendered to the plaintiff, Watson, the amount then due upon the judgment in the circulating notes of the Bank of Tennessee known as the new issue, paying the costs in lawful money. On the same day, Watson gave to Perkins an acknowledgment in writing, that the amount

of the principal and interest then due upon the judgment had been tendered to, and refused by him. On April 12, 1873, Perkins filed a petition stating these facts, and asking that further proceedings on the judgment be stayed, and obtained from one of the judges of this court an order staying the proceedings accordingly, upon his giving bond with security as required. The circulating notes thus tendered were not brought into court with the petition, and there is testimony tending to show that this was not done at the request of the clerk of this court, who was reluctant to receive the funds, and with the assent of Watson. On May 11, 1875, Watson received and receipted for $5,000 of "new issue" notes paid by Perkins on the judgment. On January 5 1878, the death of Watson was suggested in the cause and admitted, and the judgment of March 5, 1873, was revived in the name of Robert Ewing, receiver of the assets of the Bank of Tennessee. On the same day, a hearing was had upon the petition of Perkins, and it was adjudged by this court that the issues of the Bank of Tennessee, which had been tendered to Watson, were receivable in payment of the judgment, and that the sureties on the *supersedeas* bond were not liable thereon, the main object of the petition, which was to ascertain whether the judgment could be paid in the "new issue," having been attained. But this court at the same time rendered a judgment in favor of Robert Ewing, receiver, against D. M. Perkins, and W. H. Moore one of the defendants, as the surety of appeal of Perkins, in the judgment of March 5, 1873, the other defendant surety

being then dead, for the amount of that judgment with interest, after deducting the payment of $5,000 as aforesaid, and awarded execution. The court adjudged that the judgment was dischargeable in any of the issues of the Bank of Tennessee, and directed the clerk in the entry to endorse upon the execution that it was so payable. The execution upon this judgment was issued July 4, 1878, levied upon the land in controversy August 5, 1878, and enjoined by an injunction sued out under the present bill during the same month.

By statute a judgment obtained in any court of record of this State, in the county where the debtor resides at the time of rendition, shall be a lien upon the debtor's land from the time the same was rendered, subject to be lost unless an execution be taken out and the land sold within twelve months after the rendition of the judgment: Code, sections 2980, 2982. Code, section 2983, is: "If the sale within the twelve months is prevented ·by injunction, writ of error, appeal in the nature of a writ of error, or other adverse proceeding in court, the lien will be continued, provided the creditor shall issue execution and sell the land within one year after the injunction is dissolved, the judgment or decree affirmed, or other adverse legal proceeding dismissed."

The original judgment of Watson against Perkins was in an action at law in the circuit court of the county of the defendant's residence, upon a bill of exchange, and the only modes of bringing the case

to this court were by appeal in error or writ of error. In either case the lien of the judgment would be continued upon affirmance: *Cooper* v. *Savings Bank*, 5 Baxt., 636; *Bangees* v. *Partee*, 1 Leg. Rep., 87. So the *supersedeas* of an execution, either as ancillary to a writ of error for appeal, or *coram nobis*, would be within the statute: *Brinkley* v. *Welch*, 7 Lea, 278; ' *Planters'* *Bank* v. *Union Bank*, 5 Hum., 304. *Prima facie,* therefore, the original judgment lien of the defendant would be kept alive by the adverse proceedings which prevented its enforcement within the year.

It is insisted that the judgment of affirmance of 1873 was not a lien on the land in controversy, because it is provided by statute that where a bank obtains judgment against any person, no clerk or justice shall issue execution thereon until two years from its rendition, unless the bank offers to endorse on the execution that its notes will be taken in payment of such execution: Code, sec. 1829. But if it be conceded that the statute applies to the judgment in question, and that its provisions are not merely directory to the officer authorized to issue the execution, the lien of the judgment would not be affected if executed within the year, and *non constat* that the endorsement would not have been made, and the land sold in the time prescribed, if the sale had not been prevented by the adverse proceedings. And this is also the answer to the irregularities alleged to exist in the execution actually issued. The court cannot know that these irregularities and omissions would not have been cured, and the land sold in time if

the adverse proceedings had not been instituted. The
statute expressly saves the lien if the sale is prevented
by such proceedings.

It is also argued that inasmuch as the Supreme
Court in the *supersedeas* case rendered a new judg-
ment against Perkins, instead of directing an execu-
tion to issue from the old judgment, there was no
lien of the new judgment to attach to the land pre-
viously conveyed to the complainant. But a new
judgment is always rendered by this court upon the
affirmance of the judgment of an inferior court brought
up by an appeal in the nature of a writ of error,
or by a writ of error. It is a mere renewal or con-
tinuance of the old judgment. And it has never been
supposed that the lien, which is expressly saved by
an affirmance, would be affected by the form of entry.
The form of entry upon the dismissal of a *superse-
deas* cannot have any greater effect. It was discre-
tionary with the court to dismiss the *supersedeas,* and
leave the original judgment in force, or to render a
new judgment in affirmance of the old. The lien
would be saved by the statute in either case.

The Referees hold that the tender of the "new
issue" by Perkins to Watson in March, 1873, had
the effect to discharge the lien of the judgment. They
put their report upon the ground that this court, in
its adjudication upon the *supersedeas,* treated the tender
as continuous, and, under the circumstances, as a full
and perfect legal tender. In this conclusion the Ref-
erees are clearly mistaken. If the court had consid-
ered the tender as continuous, they would have held

it to be a release of the interest and costs as to Perkins, although not a discharge of the debt: *Gracey* v. *Potts,* 4 Baxt., 395. And if they had considered the tender, under the circumstances, as full and perfect, they would have held it to be a release of the sureties of appeal against whom the original judgment was also rendered. On the contrary, this court gave judgment against Perkins and Moore, his surviving co-debtor, for the full amount of the former judgment, with interest, less only a payment made long after the tender. The adjudication plainly was that the judgment-debtor was entitled to pay the judgment in the "new issue" of the Bank of Tennessee, and therefore the *supersedeas* was properly sued out, but inasmuch as the debtor had not kept the new issue, and brought it into court, the creditor was entitled to the benefit of his original judgment, after deducting only the actual payment made. To this extent the *supersedeas* was in effect dismissed. So far as Perkins is concerned, the defense of tender was not made out, and the judgment lien was saved.

The question remains, whether what was done operated to discharge the judgment lien on the land in controversy in favor of the complainant. The conveyance of Perkins to the Lincoln Savings Bank is only to secure pre-existing debts. The bank is therefore not a *bona fide* purchaser for value, and there is no pretense of want of notice. Both parties are creditors of a common debtor whose equities are equal, and whose legal rights must turn upon diligence and strict law. The defendant occupies no

fiduciary relation to the complainant that compelled him to active diligence, or forbade him from refusing a tender or releasing securities.

At common law, which has always been the law of this State, a tender never was a bar to the debt, and only stopped interest and costs if always kept ready, and brought into court: Bac. Abr. *voce* Tender; *McNairy* v. *Bell*, 1 Yer., 502; *Keys* v. *Roder*, 1 Head, 20; *Miller* v. *McKinney*, 5 Lea, 93; Code, secs. 2926, 2940, No. 9. The tender in question did not, therefore, pay the judgment, nor, as we have seen, stop the interest thereon. It has been held, however, that where a tender is expressly made to redeem a chattel held as security for a debt, and is wrongfully refused, the special property of the pledgee in the chattel ceases: *Ball* v. *Stanley*, 5 Yer., 199. The same rule has been applied to other liens or chattels, where title passes without writing. At common law, a mortgage was regarded as an estate upon condition, and a tender upon the day necessarily satisfied the condition and terminated the mortgage. A tender after the day could have no such effect, for the estate had then become vested: *Currier* v. *Hunt*, 9 Allen, 522; *Shields* v. *Lozear*, 34 N. J., 504. And equity, as said by Lord Eldon, never would compel a creditor to part with his security till he has received his money: *Postlethwaite* v. *Blythe*, 2 Swanst., 256. In those States which treat a mortgage as passing no title, the authorities are in direct conflict as to the effect of a tender on the mortgage: 18 Am. Law Reg., 182; Jones on Mort., sec. 886, *et seq.*

It has never been held in any State which treats a mortgage as passing title to realty, that a tender would divest the title.

The case before us presents the question whether the lien of a judgment can be discharged by a tender which leaves the judgment itself in full force. For, as we have seen, this court has already adjudged in the *supersedeas* proceedings that the tender did not affect the judgment. A judgment is the highest form of security for a debt, and the lien is made to inhere in it. Payment would seem to be, and so it has been held, the only act by which the defendant can discharge the lien. The doctrine of tender, strictly speaking, is not applicable; for a tender cannot be made after action commenced: *Keith* v. *Smith*, 1 Swan, 92. And the remedy of the debtor, if a tender be refused, is to apply to the court to restrain the sale, and enter satisfaction of the judgment by the money brought in: *Jackson* v. *Law*, 5 Cow., 248, affirmed 9 Cow., 641; *Tinney* v. *Woolston*, 41 Ill., 219; Freeman on Judgments, sec. 384. The reason is, says an eminent judge and professor, that a judgment, being a debt of record, is not discharged by a tender, as it is, in no case, the effect of a tender to discharge the debt. The judgment could only be extinguished by actual satisfaction. As long as it remain in force it must, by its very nature, as prescribed by statute, be a lien on the land. If its existence continue, it cannot be deprived of its ordinary and usual characteristics. The case is very different with a pledge or mortgage, or lien of any kind

39—VOL. 12.

collateral to the debt: Per Dwight, Com., in *Tiffany* v. *St. John*, 65 N. Y., 314, 320. We think the lien of the defendant's judgment has not been lost by any thing shown in the record, and that it antedates the complainant's mortgage.

The report of the Referees must be set aside, the decree of the chancellor reversed, and the bill dismissed with costs.

TURNEY, J., delivered the following dissenting opinion:

By statute a lien is given to judgment creditors on the lands of debtors for twelve months after rendition of judgment or decree. If the sale within twelve months is prevented by injunction, writ of error, appeal in the nature of writ of error or other adverse proceeding, the lien will continue for twelve months after injunction dissolved, judgment affirmed, or adverse proceedings dismissed: Code, secs. 2980, 2982, 2983.

In the case at bar a judgment had been obtained, execution issued, and the debtor tendered Bank of Tennessee notes in payment, which being refused, the debtor superseded the execution. This court held the tender to be sufficient and discharged the sureties on the *supersedeas* bond, but as the tender was not followed up by bringing the money into court, gave judgment against the principal for the full amount of his debt with interest.

The adverse proceeding (the petition for *supersedeas*), was not dismissed but fully accomplished the object for which it was filed, viz, to have the tender declared legal. The judgment under the petition goes so far

as to give to the debtor the right to discharge it by
payment of Bank of Tennessee issue.     Under this state
of facts I do not think the lien was continued by
the provisions of the statutes cited.     The *supersedeas*
proceedings were successfully prosecuted—a dismissal
was necessary to the continuance of the lien.

If the tender released personal securities, upon what
ground can it be held that it did not also release
real security.     The lien given is but a security, and
stands upon no higher ground than personal security.
The act that will release the one will release the other.
Can a creditor be permitted to say to his debtor, "the
law gives me a lien upon your realty, and although
you come to me within an hour after judgment rend-
ered and tender my debt in full, nevertheless I will
not accept, but will hold your property encumbered,
and restrain you from its disposition for twelve months"?
I think not.     All the creditor is entitled to is his
money; to secure that the lien is given; when it is
tendered he must receive it.     If he refuses, the lien
is gone, the security discharged, and the debtor at
liberty to dispose of his property.     By his refusal to
accept the tender the creditor elects to release all se-
curity, and look alone to the debtor for the payment
of his judgment.

Upon petition to rehear, COOPER, J., said:

It is not claimed by the petition for rehearing in
this case, or by the accompanying arguments that any
material fact in the record was overlooked by the
court, or that any position assumed by the counsel of

the petitioner in the discussion had been passed over without notice. The greater part of the arguments now submitted consists of a restatement of the points relied on at the hearing, and of the reasoning used in support of them. Not a single new authority really pertinent to the issues involved has been adduced. The case was an important one, both on account of the questions of law raised and the amount in controversy. The matters of litigation were, therefore, carefully considered, and the conclusions reached deliberately weighed. It would be useless to go over the same ground, notwithstanding the able elaboration by counsel of the former argument, for the opinion delivered undertakes to meet the points relied on, and another opinion would only be a substantial repetition.

In the printed argument submitted, one new point is made. The point is thus stated: "Perkins being only a surety for the debt, the lien of the judgment as to his lands was necessarily discharged by the tender, even if the court should hold that the tender was not in effect a continuous tender." This court held, when the judgment now enjoined was rendered, that the tender was not a continuous tender, for the judgment was for the original debt with interest. And it is impossible to see how it could have held otherwise under the law and the facts. The judgment being against Perkins himself, and the tender not continuous, it is not easy to see how the lien of the judgment on Perkins' land could possibly be affected by the fact that he occupied the relation of surety to some other party to the original cause of action, who is not sued. The

Bank *v.* Ewing.

lien is an incident to the judgment, and, as we have seen, necessarily inheres therein for the statutory period, so long as it exists. If the principal debtor had made the tender, then a different question altogether would have arisen. The surety would be released by the surrender by the creditor of a fund to which the surety would be entitled to be subrogated upon pay-ment of the debt. But a tender by the judgment debtor himself, no matter whether he be principal or surety, can have no effect upon the judgment unless kept up so as to be a payment.

Another position assumed in argument is, that to entitle the creditor to a continuance of his judgment lien under the Code, sec. 2983, the action of the cred-itor must be wrongfully arrested. That is to say, if the adverse proceeding in court which stays the sale is occasioned by the wrongful act of the creditor, the statute does not apply. And the argument is that the adverse proceeding in this case grew out of the wrongful act of the creditor in refusing a proper tender. The argument is ingenious, but it ignores the fact that the test of the statute is the dissolution of the injunction, the affirmance of the judgment, or the dismissal of the adverse legal proceeding. There is nothing either legally or morally wrong in refusing a tender in order to test a right, and the wrong is in not keeping up the tender so as to make it a satis-faction in the event the court should determine that the party was entitled to make it. As said in the former opinion, this court in effect dismissed the ad-verse proceeding by rendering a judgment for the entire

debt with interest, and thereby holding that the tender was not kept up so as to constitute a legal defense.

It is also said, that although the judgment lien be extended between defendant and Perkins, it cannot be extended against complainant, because, says the argument, when the last judgment was rendered complainant had a *bona fide* lien, and stood upon the same ground as if he had bought for value and without notice. But if he had bought for value and without notice, he would stand in no better attitude than the debtor from whom he bought, where the law requires him to take notice at his peril. And how a beneficiary under a trust assignment to secure a pre-existing debt due him can be a *bona fide* purchaser for value, and without notice, under the uniform decisions of this court, it is difficult to understand. Such a person stands in the shoes of his grantor as to existing equities and liens except in cases falling within the terms or the policy of the registration laws: *Anderson* v. *Ammonett*, 9 Lea, 1.

The re-hearing must be refused, and the petition dismissed.