# JUNE TERM 1883.*

---

### GEORGE H. SELBY v. JOHN HURD ET AL.

*Tender of performance in discharge of lien.*

Tender of performance of an agreement will not operate to extinguish the lien by which the agreement is secured if it is not unequivocal and reasonably capable of being understood by the other party as a bona fide tender of the requisite thing, act or service; and the offer itself should be accompanied by circumstances fairly implying control of the necessary means, and possession of the necessary ability to fulfill it.

Error to Osceola. (Judkins, J.) April 26.—June 13.

TROVER. Defendants bring error. Reversed.

*Morse, Wilson & Trowbridge* for appellants.

*M. Brown* and *C. M. Beardsley* for appellee.

GRAVES, C. J. The plaintiff recovered damages in trover for a large quantity of lumbering appliances, and the defendants brought error.

August 20th, 1880, the plaintiff entered into a written contract with defendants to go upon certain of their lands and take off several million feet of saw logs and deliver them on skidways on the main line of the Evart & Osceola Railroad. He was to commence about the 23d of the same month and make delivery as fast as possible and fully complete the entire job on or before the first day of May, 1881. The contract contained the following special provision:

---
*Continued from Vol. 50.

51 MICH.—1

" And it is also expressly agreed that in case said parties of the second part [the defendants] shall at any time become satisfied that the work on the contract is not progressing as rapidly as it should to be completed as agreed, said second parties are hereby authorized to take possession of said job and all teams, tools, sleighs, implements, roads, camp, etc., used by said first part in and about the prosecution of said job, and complete the putting in and delivery of said logs as agreed by said first party, at his expense and charge the same to said first party under this contract."

The plaintiff began work the latter part of August and proceeded with it until about the 5th of April. Only a few days remained in which to finish up the work in accordance with the contract, but the job was very much behind and it was quite impracticable for the plaintiff to complete it in the time left to him. He had just finished a similar job for one Eldred, and was much in need of money to pay off the men who had worked there for him. The defendants had advanced him a large sum on their contract and they were anxious to have the lumbering completed and the logs delivered with the least possible delay. At the same time he requested a further advance to enable him to pay off his men, and the defendants let him have $717. This money was advanced under an arrangement the nature of which is the subject of contention. The plaintiff executed on the back of the contract the following instrument :

"EVART, Michigan, April 5, 1881.
" For a good and valuable consideration to me in hand paid I hereby sell, assign, transfer and set over all my right, title and interest in and to the within contract, and all of the goods, chattels and camp utensils named within and used by me on within lumber job of every name and nature, to Hurd, McFarlane & Company of Evart, Michigan, intending by this indenture to convey to said Hurd, McFarlane & Company all of the horses, harnesses, oxen, yokes, chains, sleighs, trucks, cant-hooks, bed and bedding, cooking utensils of every name and nature, and all camp equipage of every name and nature used by me on within named lumber job, also the tram road and cars used on said road and on within named job."

On the execution of this writing the plaintiff turned over the property at once to the defendants, and they proceeded at considerable expense to finish up the job.

The plaintiff claims that in handing-over the property he also delivered three teams from the Eldred job, but the defendants deny this and insist that all the teams which were given up were in use on their job and covered by the two contracts. The suit relates to the property so turned over to the defendants, and it is conceded that all of it, unless the three teams should form an exception, was the same property intended by the two contracts.

The chief subjects of controversy at the trial may be thus explained. The plaintiff claimed that this second writing, which was endorsed on the contract, was not abso-lute and final, as indicated by the terms, but was subject to an unwritten condition which converted it to a mortgage; that the purpose of the transaction was to secure the defend-ants for their advance; and that the understanding was that the plaintiff should still go on and conduct the work to completion, and in that way and through such means pay back the money advanced; that after the property was handed over to the defendants he offered to proceed and carry out the arrangement, but they refused to accept the tender, whereby the lien created by the assignment was effectually discharged.

The defendants denied that the assignment was subject to any condition. They claimed that it was an amicable expe-dient to carry out the special provision in the original con-tract and put them in possession of the property in order to effectuate the object of that provision which had become imperious in consequence of the plaintiff's laches. They further insisted that proof of prior and contemporaneous talk was not admissible to show that the assignment was conditional, and also that the plaintiff made no offer to per-form sufficient to affect their right to the property.

In the view taken by the Court it is quite unnecessary to consider whether it was competent for the plaintiff to intro-duce the unwritten matter in order to engraft a condition

on the assignment and turn it into a mortgage. The case may be decided on the plaintiff's theory, and for this occasion it may be assumed that the transaction was in substance a mortgage as he claims. The vital question then is whether the trial judge was warranted in putting the case to the jury on the supposition of a state of facts tending to show that such an offer of performance was made by the plaintiff as would liberate the property from the alleged lien. The point is fairly raised by the charge and exception, and we think the direction, on this subject at least, was a plain mis carriage.

In order that an offer of performance should operate as performance itself, and extinguish a lien, it should be unequivocal and reasonably capable of being understood by the other party as a bona fide tender of the requisite thing, act or service; and the verbal element should be accompanied by circumstances fairly implying control of the necessary means and possession of the necessary ability. Independently of some loose talk touching the consummation of the job through the plaintiff's aid, and his chance to work enough out of it to repay the advance to him, there was nothing to support his theory of an offer of performance. He was evidently without means and he does not pretend to have met the defendants on the footing of one in actual readiness to perform the condition claimed, and as actually making the offer. It is needless to go further.

The judgment must be reversed with costs, and a new trial granted.

COOLEY and CAMPBELL, JJ. concurred.