# CHARLESTON.

THOMPSON *v.* LYON.

Submitted June 12, 1894—Decided December 8, 1894.

1. CHARGE ON LAND.

A father deeds to his son a tract of land, in consideration of the payment of a certain sum therein named by said son to his two sisters, one year after the father's death, without interest. Such son is not bound to wait until the end of the year after his father's death before he can pay said amount, but has the privilege of paying it at any time during the year.

2. CHARGE ON LAND—TENDER.

An offer to pay one of the sisters the amount coming to her under the deed, two or three days before the end of the year, and counting the money down to her, which she declined to receive, without assigning any cause, constituted a valid tender, under the circumstances.

3. CHARGE ON LAND—VENDOR'S LIEN.

Said sister having made no subsequent demand for the money, said son, upon paying the money due said sister into court after giving proper notice, was entitled to a release of the vendor's lien reserved in said deed, so far as it secured her said sum.

4. TENDER—WAIVER.

A strictly legal tender may be waived by an absolute refusal to receive the money, on the ground that no man is bound to perform a nugatory act.

5. TENDER.

It is not necessary, to constitute a legal tender, that the identical money tendered was kept and brought into court.

6. TENDER—INTEREST.

In general the effect of a tender in proper time by the debtor is to stop subsequent interest on the claim, if the money is unqualifiedly refused, which tender may be defeated by a subsequent demand and refusal.

JOHN BASSEL for plaintiff in error, cited 7 Wait's Act. & Def. 580, 581; 96 U. S. 580.

JOHN J. DAVIS for defendant in error, cited 3 Har. & McH. 85; 4 Min. Inst. Pt. 1, p. 611; 7 Johns. Ch. 7; 5 Laws R. & R. p. 4181; 34 Ver. 536; 38 N. H. 191; 1 Wash. 26; 4 Call 402; 36 Ill. 18; 67 Ala. 310; 92 Ill. 604; 21 N. Y. 366.

ENGLISH, JUDGE:

By a deed dated the 14th day of May, 1873, Hugh Thompson conveyed to Thomas Thompson a tract of land, in consideration of three hundred and thirty three and one third dollars to be paid by said Thomas Thompson to Nancy J. Lyon and Elizabeth Payne equally, one year after the death of the said Hugh Thompson, and, to secure the same, a vendor's lien was therein retained on said tract of land until paid, and for the further consideration of natural love.

It appears that two or three days before the expiration of the year after the death of said Hugh Thompson, the said Thomas Thompson went to the house of Nancy J. Lyon, and offered to pay her the sum of money she was entitled to under said deed, and counted the money down on a stand to her, and she said she could not take it, and did not take it.

On the 31st day of August, 1893, said Thomas Thompson had a notice served upon said Nancy J. Lyon that on the 14th day of September, 1893, he would move the Circuit Court of the County of Harrison to direct the clerk of the County Court of said county to execute a release of the lien reserved in a certain deed of conveyance made to him by Hugh Thompson on the 14th day of May, 1873, to secure the payment to said Nancy J. Lyon and Elizabeth Payne of the sum of three hundred and thirty three dollars and thirty three and one third cents to be paid to them equally one year after the death of said grantor, Hugh Thompson, on the tract of land therein mentioned, describing it, as he had theretofore tendered her her portion of said sum and she refused to accept the same.

On the 14th day of September, 1893, an order was entered, in pursuance of said motion in which it is stated that the

court having heard the evidence and argument. of counsel, and it appearing to said court that said Thomas Thompson duly tendered to the said Nancy J. Lyon her portion of said sum secured to her in said deed, in pursuance of the terms and provisions thereof, which she then refused to receive, and now here pays into court for the said Nancy J. Lyon, the sum of one hundred and sixty six dollars and sixty six and two third cents, her share-of the sum so secured to be paid her by said deed; and it further appearing that the sum due Elizabeth Payne has been paid her; and the court being now of opinion that Thomas Thompson is now entitled to have a release of the lien retained in said deed, which the said Nancy J. Lyon refuses to execute—it was ordered that P. M. Long, clerk of the County Court of Harrison county, do execute to said Thomas Thompson a release of the lien reserved in said deed for the benefit of the said Nancy J. Lyon, and that he the said Thomas, recover against her his costs herein expended; and from this order the said Nancy J. Lyon obtained this writ of error.

It is assigned as error that the court held there was a sufficient tender, although the same was made before the money was due. Now, it must be conceded that the weight of authority is that, where one party contracts to pay another money on a certain day, the tender, in order to be available, must be made on the day it falls due. When, however, we look at the circumstances of this transaction, it is apparent that there really was no contract between said Thomas Thompson and Nancy J. Lyon, by which he promised to pay her any money at any specified time. The deed which Hugh Thompson made to his son Thomas imposed upon him, as a condition precedent to his acquiring the title to said land, that he should pay to his sisters Nancy J. Lyon and Elizabeth Payne the sum of three hundred and thirty three dollars and thirty three and one third cents one year after the death of said Hugh Thompson. This length of time, one year, was allowed said Thomas Thompson as a favor, not by Nancy J. Lyon, but by his father, and she was no party to the contract fixing the date of payment, and she could not object if, in pursuance of the terms and conditions imposed

upon him by his father's deed, said Thomas paid said sum before the year expired. His father had conferred upon him the privilege of waiting a year before he paid said money, and Nancy J. Lyon could not complain if he did not exercise the privilege thus conferred to the last moment and to the fullest extent. Again, the money said Thomas was to pay was not bearing interest at the time he offered to pay it to her. Parsons on Contracts (volume 2, 8th Ed., top page 642) says: "It has been said that a tender can not be made before the debt is due, as the creditor is not then obliged to accept it, even if it does not draw interest. But we should be inclined to believe that the courts of this country would generally hold a tender valid that was made before the debt was due, provided the debt did not draw interest, or if, when the debt did draw interest, the tender included interest to the maturity of the debt." In speaking of the effect of the plea of tender, Prof. Minor, in his Institutes, volume 4, point 1, side page 611, says: "The effect of the plea of tender, in a few cases to which it is not needful to advert, is to extinguish the obligation; but, in general, it is merely to relieve the debtor from subsequent interest and costs"— citing Bac. Abr. "Tender," F, where it is said: "The effect of a tender, when lawfully made, is to discharge the debtor from subsequent interest and costs." See *Jackson* v. *Law*, 5 Cow. 248; also *Raymond* v. *Bearnard*, 12 Johns. 274.

As we have seen, the debt in the case under consideration did not bear interest at the time Thomas Thompson offered to pay the amount to his sister Mrs. Lyon, the year had not expired from the date of the death of Hugh Thompson, and it is difficult to perceive how she could have been prejudiced by receiving the money at the time it was offered to her. The evidence shows that the money was counted down to her, and, without assigning any reason whatever for her action, she simply said "she could not take it," and did not take it. Now, what is the effect of this conduct on the part of Nancy J. Lyon? Lawson in his work on Rights and Remedies, section 2534, says: "A tender may be waived by the creditor either expressly or impliedly, as where he states that nothing is due him, and that he will accept nothing, or

says, simply, that he will not receive the money or chattels." So, in Litt. Sel. Cas.(Ky.) 204, it was held, in the case of *Dorsey* v. *Barbee*, that "the positive declaration of one to whom money is to be paid, within a certain time, that he will not receive it, will excuse the tender of the money, provided the declaration is made before the expiration of the time." It was also held by the Supreme Court of Tennessee in the case of *Farnsworth* v. *Howard*, 1 Cold. 216, that the production of the money is dispensed with if the party is ready and willing to pay, and is about to produce the money, but is prevented by the party to whom the money is going refusing to receive it; but this bare refusal to receive the amount proposed, and demanding more, is not, of itself, sufficient to excuse an actual tender. Again, in the case of *Bellinger* v. *Kitts*, 6 Barb. 274, it was held that "the general rule is that a strictly legal tender may be waived by an absolute refusal to receive the money, on the principle that no man is bound to perform a nugatory act." And in 10 Cush. 267, in the case of *Hazard* v. *Loring*, the court held that, " in making a tender, actual production of the money is not necessary, if the defendant refuses to receive it." See, also, 2 Pars. Cont. p. 643. This question was also before this Court in the case of *Koon* v. *Snodgrass*, 18 W. Va. 320, where it was held that "the proper mode of making a legal tender is to actually produce and proffer the exact sum due; but this may be dispensed with by the party to whom the money is to be paid, when he refuses to receive the money, not on the ground that the money is not produced, nor on the ground that the amount produced was not the exact amount offered, but on some collateral and entirely distinct grounds;" and this case is quoted with approval in 38 W. Va. 80 (18 S. E. Rep. 379) by the court, in the case of *Poling* v. *Parsons*. Where the money is tendered in proper time, and is refused, all the elements of a technical tender are waived and the effect is precisely the same as if a tender, legal and proper in every respect, had been made; just as where protest of a negotiable note is waived, the indorsers are bound to the same extent as if all the technicalities of a legal process had been complied with, including notice, *etc.* To illustrate, Parsons on Contracts, volume

2, top page 642, says: "To make a tender of money valid, the money must be actually produced and proffered, unless the creditor expressly or impliedly waives this production, and he does this by declaring that he will not receive it." In the case of *Rudulph* v. *Wagner*, 36 Ala. 698, the court held that "a tender of the amount due, including interest, at any time between the maturity of the debt and the commencement of the suit, stops the interest and discharges the debtor from the costs of the suit." 2 Pars. Cont., at top page 638, speaking of the effect of a tender, says: "But it puts a stop to accruing damages or interest for delay in payment, and gives the defendant costs." So in *Curtiss* v. *Greenbanks*, 24 Vt. 536, it was held that, "where money is tendered and refused, the person tendering it is at liberty to use it as his own. All he is under obligations to do is to be ready at all times to pay the debt when requested." And Lawson on Rights and Remedies (volume 5, § 2526) says: "The debtor must keep the money safely, so as to be ready at any time to produce it, but he may use it, and he need not have the identical money ready. * * * But the benefit of a tender is lost by subsequent demand and refusal." And in *Jackson* v. *Law*, 5 Cow. 248, it is held that "the effect of a tender, when made in season is merely to discharge the debtor from subsequent interest." It is not necessary to prove, under a plea of tender, that the identical money tendered was kept and brought into court. *Colby* v. *Stevens*, 38 N. H. 191. See also *Railroad Co.* v. *Dunham*, 30 Mich. 128.

Now, if Nancy J. Lyon refused to accept the money offered her by her brother Thomas Thompson, because it was offered to her a day or two before the year had expired since the death of their father, Hugh Thompson, she failed to assign that as a reason, and, as the amount was not bearing interest, it would have been very unreasonable in her to assign such a motive for rejecting the money. Why should she have objected to receiving the money if it had been offered to her one day or one week after the death of said Hugh Thompson? If she had received it, she could have invested it, and made it an interest bearing fund, instead of permitting it to lie idle in her brother's hands. Why, then, should

she insist that the last day of the year should arrive before she received the money? She did not, however, do this. She simply declined to receive it without assigning any cause, and, so far as the record discloses, she never made any subsequent demand for it. As I read this clause in the deed, Hugh Thompson intended to say to his son Thomas, "You can have one year's time in which to pay this purchase money to your sister"; but he never intended to say he could not pay it sooner, if he chose to waive the privilege conferred by the deed, and, while Nancy J. Lyon had no right to demand the money before the end of the year, she had no, right to prevent him from anticipating the payment for one or two days, or six months, if he saw proper to do so.

There is a marked distinction between contracts made between parties for their mutual benefit, where one becomes a borrower of money because he wishes to use it in some business undertaking, and desires such use of it for a definite period, and the other loans it because he desires the interest at stated periods, and wishes to avoid the inconvenience and trouble of making reinvestments at short periods, and the case of a mere charge or lien reserved upon land to secure the payment of money at some future time without interest. In the first instance, each party is directly interested in having the payment of the principal at the time fixed in the contract, and in preventing the payment by way of anticipation; while in the second instance, the party to whom the money is coming has a direct interest in receiving the money as long before the time fixed for the payment as possible. If Thomas Thompson had succeeded in getting Nancy J. Lyon to receive the money when he offered to pay it, it would have been to her benefit, and to his prejudice, and in violation of no contract between her and himself. If the debt had been an interest bearing one, there would have been some excuse for her refusal to receive the money until the year was out; but, as the amount did not bear interest, she could in no way have been prejudiced in receiving the money, and there could be no reason for delaying the tender, if said Thomas was able and willing to make it, until the expiration of the year. In the case of *M'Hard* v. *Whitcroft*, 3 Har. & McH. 85,

the case considered was an action of debt upon a bond dated
the 24th day of September, 1778, and conditioned for the
payment of four hundred and forty two pounds and ten shill-
ings at or upon the 1st of September, 1788, with interest.
The defendant pleaded payment before the issuing of the
writ, to wit, on the first of September, 1788.   General repli-
cations of non payment and issue joined.   At October term,
1790, the jury found by their special verdict that the defend-
ant, in discharge of so much of the bond on which the suit
was brought, did tender bills of credit, which was a legal
tender by law to the plaintiff, to the amount of one thousand,
one hundred and seventy five and two-thirds dollars, which
tender was made on the 7th of March, 1781; and, if the said
tender was good, then they found that there was thirteen
pounds and one shilling specie duty on said bond; but, if the
tender in discharge of said bond could not be made before
the 1st of September, 1788, then they found due on the said
bond eighty eight pounds and ten shillings specie with inter-
est from the date of said bond.   The general court gave
judgment on the said special verdict for the plaintiff for the
penalty and costs, to be released on the payment of eighty
eight pounds and ten shillings current money, with interest
from the 24th day of September, 1778, and costs.   The de-
fendant appealed to the court of appeals, which court, after
hearing arguments, reversed the judgment of the general
court.   Now, in that case, the bond bore interest, and yet
the court of appeals held the tender made before the matu-
rity of the bond to be good; and, if that decision be good law,
how much more so ought the tender to be held good where
the claim bears no interest, as in the case we are consider-
ing.   If the reason for the law be that it would be an unwar-
ranted infringement of the contract between the parties who
had made the contract, for the purpose of enjoying the inter-
est without the trouble of reinvestment, to allow a tender to
be good before obligation became due, how much more so
should a tender be held good which is made before the claim
is due, where the claim bears no interest.   The legal maxim,
"*Cessante ratione legis cessat et ipsa lex*," applies.

Said Nancy J. Lyon having absolutely declined to receive

the money when offered to her only a day or two before it was due, without assigning any reason for such refusal, and never afterwards having made any demand for the money, my conclusion is, that the plaintiff, having paid the money into court, was entitled to a release of the vendor's lien, and the court committed no error in so ordering; and the judgment complained of is affirmed, with costs and damages.

BRANNON, PRESIDENT, (Concurring):

A question in the case is, after a tender, must the very identical money be kept ready to be paid to the creditor, if he comes for it, or ready to be filed with a plea of tender or other pleading seeking to enforce the tender? If the money be not kept, but is used by the debtor, will he be charged with interest after the tender? I think he need not keep the same money. So he have that same money, or good legal tender money, when demanded of him, or when he brings it into court, that will do. He thereby keeps good his original tender. The other rule confers no benefit on the creditor. So he gets good money when he concludes to accept, or when the tender is enforced upon him, that is all he can ask. Why keep the same gold dollars? Others are as good as those. The other rule would needlessly harm the debtor, as it would require him to keep money idle for an indefinite time. Will we be told that he ought to pay interest because he has used the money and made interest? To that I reply that the money is his own, not the creditor's, as before the tender it was the debtor's and by refusal to accept it the creditor refused to become its owner. The interest upon it is not the creditor's because it is not his money, and also because by the tender the debtor does all in his power to execute his promise to the creditor, and the creditor's wrongful refusal of the tender ought not to give him legal or moral claim to interest produced as well by the talent of the debtor as by the money. We will be misled in this matter by the general language of the books in treating of tender, as in many instances they seem to imply that the thing tendered (the same) must be brought into court; but when we come down to the very point (that is, the identical money) they do

not mean that. The forms of the plea of tender never aver that the money brought into court with the plea is the selfsame, identical money tendered, but is the same sum or amount of money tendered. That is their import. 2 Saund. Pl. & Ev. 835; 2 Chit. Pl. 431, 469, 601, 661; 5 Rob. Pr. 952, 953; 1 Barton, Law Pr. 493. A rule requiring the keeping of the same silver or gold dollars would be inconvenient and unnecessary. That the identical money need not be kept is held pointedly by *Colby* v. *Stevens,* 38 N. H. 191; *Curtiss* v. *Greenbanks,* 24 Vt. 536. The case of *Bissell* v. *Heyward,* 96 U. S. 580, holds a contrary doctrine. It holds that a tender, to stop interest and costs, must be kept good, and ceases to have that effect if the money is used by the debtor for any other purpose. When we analyze the case, we find it unsatisfactory and not well considered on this point, as the opinion simply asserts said proposition, and cites *Roosevelt* v. *Bank,* 45 Barb. 579; *Giles* v. *Hart,* 3 Salk. 343; *Sweatland* v. *Squire,* 2 Salk. 623. Turn to these cases. The case cited from Barbour is productive of mischief by the syllabus, that "if after tender made the money is used by the debtor in his business, and mingled with his other money, the tender is not valid." It is unwarranted by the opinion, as the judge delivering the opinion says, not that it is law, but that "it may be doubted whether a tender is good when it appears that the money tendered was afterwards used by the debtor in his own business. He is to keep the money always ready to pay when demanded, and when bills are tendered in payment and not objected to, the same bills should be brought into court. This would not be necessary to discharge a lien, but it might be to deprive a creditor of interest." He cites *Kortright* v. *Cady,* 21 N. Y. 343. How that case supports such a proposition I do not see, holding, as expressed in the syllabus, that "tender of the money due upon a mortgage, at any time before foreclosure, discharges the lien, though made after the law day, and not kept good; and where the tender does not discharge the debt, but only defeats a particular remedy, it is unnecessary to show continued readiness to pay or bring the money into court." The two old English cases cited in the supreme court do not

touch this point. *Giles* v. *Hart*, 3 Salk. 343, holds that, "in debt on bond to pay a certain sum on a day, there a tender on the day and *semper paratus* is a good plea, but not in *assumpsit.*" In *Sweetland* v. *Squires*, 2 Salk. 623, the plea was a tender of so much, but the court held that as there was a breach of contract, and no damages or interest for time from breach to tender was included in tender, it was not good. The case of *Shumaker* v. *Nichols*, 6 Gratt. 592, may be said to look the other way, as it holds that a tender in payment of a judgment will not authorize the quashing of an execution, unless the tender is followed by payment into court and a motion to enter satisfaction. This is correct. It was an execution. The court has control of its execution. It ought not to be quashed, except on payment. It was a case still pending as to payment; just like a plea of tender before judgment, it must have the money with it. But, at any rate, this does not decide that it must be the identical dollars tendered. It further holds that a tender will not justify a court of equity in stopping execution, when it is not alleged or proven that the party kept the money on hand for discharge of the judgment. This is only a reiteration of the old doctrine that the plea must aver a *"tout temps prist et encore prist"*—at all times ready, and still ready, to pay. It does not hold that the very same money must be kept isolated and distinct after tender. The Virginia case of *Downman* v. *Downman*, 1 Wash. (Va.) 26, supports the view of the majority, as it holds that where money is tendered which is legal tender at the time, but not so afterwards, the plea of tender ought to either bring in the very money tendered, or else money which is legal tender at the date of the plea.

DENT, JUDGE, (Dissenting):

It was over eighteen years from the time of the tender in this case until this proceeding was instituted. Yet there is no allegation, evidence, or even a pretense that the tender, after being made, was kept good during all these years, so as to relieve the plaintiff from the payment of interest. His motion was an equitable one, and to sustain it he who asks

must show that he has done equity. "The obligation to keep a tender good is as essential to its legal efficacy as the tender itself." *Burlock* v. *Cross*, 16 Colo. 162 (26 Pac. 142.) "A tender to prevent the running of interest must be continuing. Using the money, after refusal by the creditor to receive it, destroys this necessary attribute of a legal tender." *Gray* v. *Angler*, 62 Ga. 596. "Tender must be kept good in order to stop interest." *Angler* v. *Clay*, 109 Ill. 487; *Peugh* v. *Davis*, 113 U. S. 542 (5 Sup. Ct. 622); *Sanders* v. *Bryer*, 152 Mass. 141 (25 N. E. 86). A large number of authorities to the same effect will be found in 25 Am. & Eng. Enc. Law, p. 922, note 3, and *Id.* p. 926, note 1. Further comment is unnecessary, and entirely useless. It is sufficient, however, to add that in none of the authorities referred to by Judge English to sustain his opinion is there any discussion of the question of interest, further than to state that a proper tender stops the running of interest.

Since writing the above I have read the note prepared by Judge Brannon. His claim is that, after a tender is once made, it is not necessary to keep the same money on hand, but the money belongs to the one making the tender, and he may use it after it is refused, and can not be required to pay interest on it. As in this case, the plaintiff, having kept the money for eighteen years, had the right to use it, and the interest or profit belonged to him, and all he had to do at the end of the time was to bring forward the principal; yet, by his own acknowledgment, for all these eighteen years he owed the debt. The only reason the law excuses him from paying the interest on the amount is because he has lost the use of it, as he has had to keep himself ready at all times to make his tender good. While he is not required to keep exactly the same money, yet he is required to keep the same sum or amount, and thus he loses the use of it, and is excused from payment of interest thereon. Otherwise, if he uses it he should pay interest on it; for, though it is his money, the debt against him still exists, and he is permitted to the extent of that indebtedness to use a sum of money which does not belong to him, and it is the same thing as though he had borrowed the money. In the case of *Pulsifer*

v. *Shepard*, 36 Ill. 513, it is held: "A tender, to be available, must be kept good." "Under a plea of tender, the burden of proof is on the party pleading it." And in *Stow* v. *Russell, Id.* 18: "If a creditor refuses money tendered by a person having the right to make the tender, interest will cease to run from the time of the tender, if the debtor keeps the money continuously ready, and makes no profit by it." In *Tuthill* v. *Morris*, 81 N. Y. 94, it is held: "The most that can equitably be claimed by the mortgagor is relief from payment of interest and costs subsequent to the tender, and to entitle him to this he must keep the tender good from the time it was made." And in this case all that this plaintiff could claim was relief from the payment of interest and costs subsequent to the tender, and, to entitle him to this, he should show that he kept the tender good from the time it was made, or pay his sister, defendant, interest on her money which he had been using eighteen years. Any other conclusion is plainly unjust, and contrary to the law of this case.