# CHARLESTON.

SHANK *v.* GROFF *et al.*

Submitted Sept. 9, 1898—Decided Dec. 7, 1898.

1. TENDER—*Sufficiency of Tender—Offer to Pay.*
   While in a tender an actual visible production of money is dispensed with where the party denies all right to pay any sum, yet it must appear that there was an actual offer to pay, and that the tenderer had the money, and was about to produce it, and would have done so if he had not been prevented by such denial of right to pay. (p. 544).

2. TENDER—*Interest—Demand.*
   Tender, to stop interest, must be of an exact amount, and must be kept good and ready at all times to be paid to the creditor on demand, which must be shown by the tenderer. (p. 547).

3. MORTGAGE—*Equity Pleading—Bill in Equity—Tender.*
   A bill to redeem a mortgage must allege and rely upon a tender if one is claimed; and the money must be paid into court. (p. 546).

4. TENDER—*Equity Pleading—Interest*
   One making a tender, and then using the money, and afterwards failing to pay the money into court, with a pleading relying upon such tender, loses its benefit, and will not be released from interest by it. (p. 546).

Appeal from Circuit Court, Grant County.

Bill by Samuel B. Shank against Samuel Groff and others. A decree was rendered, from which defendant Given appeals.

*Reversed.*

GEORGE BAYLOR and BENJ. BAILEY, for appellant.

F. M. REYNOLDS, L. J. FORMAN and J. N. McMULLAN, for appellee.

BRANNON, PRESIDENT:

This case was once before in this Court. 43 W. Va. 337, (27 S. E. 340). The bill claimed that a deed, absolute on its face, was in fact but a mortgage, and it sougnt to compel the parties claiming under that deed to so treat it, and allow a redemption of such mortgage. This Court decided that it was a mortgage, and directed that a redemption be allowed. When the case went back, it was referred to a commissioner to report the proper sum "to be paid in such redemption," and his report fixed a sum which excluded interest for some years, because of a tender which Shank claimed he had made, and the court sustained the commissioner, and allowed a redemption at the sum fixed by him. To this abatement of the debt by the allowance of said tender, Given, the party claiming the debt, objects and appeals.

I do not think that the evidence shows any tender. It seems to show rather a mere talk between the parties. Shank claiming the right to redeem, and the other parties denying it; a mere expression by Shank that he desired and was willing to pay the proper sum to redeem. not even an actual offer, with money in his pocket to redeem. A mere proposition to redeem will not do. The strict law of tender requires the actual production of a precise and proper sum of money in the out-stretched hand, so that the creditor may take it. I know that circumstances will mitigate this strictness, but still there must be what shall be called an actual offer of the actual money ; it must amount to that. "Mere readiness and willingness to pay the debt amount to nothing without an offer or tender of payment, and a refusal by the creditors." 25 Am. & Eng. Enc. Law, 916; *Moore* v. *Harnsberger's Ex'rs,* 26 Grat. 667; *Moynahan* v. *Moore,* 77 Am. Dec. 474. Though it is claimed in this case that the parties entitled to the money at the time of this alleged tender refused to allow a redemption, and that such refusal dispenses with the production of actual money, yet it must be clear that the offer to pay was an actual offer, with money present on the person of the tenderer, though not presented to sight. If the party had not the money, and his proposals to pay were a mere pretense,

surely it would be no good tender.   Therefore the circnm-
stances must be such as to show that the party was ready
to make actual payment, and that he would have done so
but for such refusal. "Actual tender of money is dispensed
with if the debtor is willing and ready to pay, and about
to produce it, but is prevented by the creditor declaring
he will not receive it." *McCalley* v. *Oley*, (Ala.) 42 Am. St.
Rep. 87 (s. c. 12 South. 406).   Shank says that he went to
Keneagy and Groff and said to each one that he was there
to pay the money, but he does not say that he had the
money, that he showed it, that he actually offered it; nor
does he express any sum that he offered.   Indeed, it ap-
pears that likely he did not know the sum to be paid, but
that it was to be ascertained by calculation.   Anyhow, he
does not say what sum he offered to pay, nor even that he
had the money there to pay, nor does he give date of
offer.   We must be able to say that he had the money on
his person, and we cannot. *Moynahan* v. *Moore*, 77 Am.
Dec. 474.  "A plea of tender ought to state particularly the
day when it was made.  Instead of pleading that he offered
the principal and all the interest due, the defendant ought
to compute the interest, add it to the principal, and say
that he offered a sum certain." *Downman* v. *Downman's
Ex'rs*, 1 Wash. (Va.) 26.   But a conclusive consideration
against the allowance of this tender is that it was made in
the fall of 1891, and in 1893 Shank brought this suit, not to
enforce a tender, nor to declare the deed a mortgage, and
allow the sum that had been tendered to be paid in full re-
demption, showing the truth of the tender, and that he
still insisted upon it; but the bill and two amended bills
waived such tender, if it ever existed, by admitting re-
peatedly that there was due and owing from Shank the
sum of sixteen thousand dollars, with interest thereon
from the 1st day of April, 1889, and averring a willingness
to pay that sum and that interest, and offering to pay it,
and asking the court, not to declare that he owed a specific
amount as one tendered, but to ascertain the amount by
reference to a commissioner.   He insisted in his bill that
he had the right to force Keneagy and Groff to convey and
release the land "upon the payment of the sum of $16,000,
with interest thereon from the 1st day of April, 1889."

Again and again, in these bills, did Shank admit that that sum and that interest were due from him. After he had made a tender in 1891, why did he not insist upon it in these bills filed in 1893? Why offer to pay more than was due from him? And he swore to the bills. The bills are utterly inconsistent with any idea that a tender stopping the interest in 1891 had been made. After he had made that tender, he should have pleaded and relied upon it in his bill; and, not only that, but he must bring the money into court with his bill, else the tender is unavailing, even if he had made it, and made a legal one. He neither pleaded that tender nor brought the money into court. He must bring it into court with his bill, so that the creditor can accept it if he wishes. *Gilkeson* v. *Smith*, 15 W. Va. 44; *Shumaker* v. *Nichols*, 6 Grat. 592; 25 Am. & Eng. Enc. Law, 932; *Spann* v, *Baltzell*, 46 Am. Dec. 346. The nearest approach to mention of any tender in the bill is the very general language that he "offered to pay them whatever was due on the Henning interest, but they, and each of them, refused to accept said amount, or any part thereof," and that he was ready to pay into court whatever sum the court might determine to be due; but he mentioned no amount as having been tendered, and relied on no tender, but repeatedly admitted that he owed sixteen thousand dollars, with interest from April 1, 1889. This tender was not in the pleadings, but was first presented before the commissioner by a claim made for abatement of interest. This is no plea of tender. It is simply a bill to redeem on the payment of such sum as the court should fix. "If the bill be brought on the ground of a tender made and refused, the tender should be followed up by payment into court at the time of the filing of the bill, which should contain a proper averment of a compliance with this repuirement." Jones, Mortg. s. 1095. I should think, if no actual money is produced, there ought to be a statement of the sum offered or ready to be offered. "Tender made and refused, to stop interest, must be the exact amount due, and must be kept good and ready at all times to be paid to the creditor at his demand, and on plea must be followed by the payment of money into court." *McCalley* v. *Otey* (Ala.) 42 Am. St. Rep. 87 (s. c. 12 South 406). No sum was tendered

or named, but it seems that, if he was ready to pay, the creditor must count the debt, and fix the sum. This is no tender.

But there is another strong argument against abating from the creditor's debt interest by reason of the alleged tender. The money was not paid into court, nor deposited where the creditor could get it, nor, in a legal sense, kept ready for him. Shank seeks to cut the creditor out of interest, when he used the money himself, and derived interest therefrom. Money of one man, used by another, as justly calls for compensation by way of lawful interest as does the use of a horse or any other property, and the case must be plain to deprive its owner of this legal reward. All books say that the tender must be kept good, and many strong cases say that, if the tenderer use the money, it destroys the tender. JUDGE DENT strongly presents this view in *Thompson* v. *Lyon*, 40 W. Va. 97, (20 S. E. 812). I quote from a strong opinion in *McCalley* v. *Otey* (Ala.) 42 Am. St. Rep. 90 (s. c. 12 South. 407), as follows : "Unless the tender is kept good all the time,—that is, unless the debtor is willing and prepared to make payment at any time after the tender, if the creditor should conclude to receive it, and until the money is paid into court upon a plea,—the debtor is chargeable with interest. He cannot make a tender to-day, and then use the money for his profit, and escape payment of interest. He is released from the payment of interest upon the supposition that he has been deprived of the use of the money by holding himself in readiness all the time to pay his creditor upon demand. The burden to make this proof, when the tender is denied, rests upon the debtor who seeks to avail himself of the benefit of a tender." I held the view in the *Thompson Case* that generally the use of the money by the debtor did not deprive him of his tender; but where, as in this case, there is a claim of tender, and later a bill filed, and the party does not yet even pay the sum into court, but still uses it, his tender cannot stop interest. What right or justice has he to receive interest and pay none? I am not sure now but that JUDGE DENT's position was right in all cases, though the authorities are divided on it. We think the sum proper to be decreed in this case

is sixteen thousand dollars, with interest from the 1st day of April, 1889, and that the alleged tender is unavailing. We reverse the decree, and remand the case that a decree may be entered as herein directed.

*Reversed.*