## Supreme Tent, Knights of the Maccabees of the World *v.* Fisher.

[No. 6,675. Filed February 25, 1910.]

1. INSURANCE.—*Beneficial Associations.—Policies.—Performance of Conditions.—Complaint.*—A complaint setting out the policy issued to assured in favor of the plaintiff beneficiary, and alleging that defendant association refused to furnish blanks for making proofs of death, and refused to accept proofs of death, and that the assured and the beneficiary had performed all of the conditions on their parts, is sufficient. p. 422.

2. INSURANCE.—*Beneficial Associations.—Tender of Dues.—Refusal.—Complaint.*—A complaint alleging that the assured tendered to the authorized local secretary of defendant beneficial association "all moneys and assessments due" for a certain month, which he refused to accept, sufficiently shows a tender. p. 422.

3. EVIDENCE.—*Declarations of Assured After Suspension.—Insurance.*—Declarations by an assured, made after his suspension by a beneficial association for nonpayment of dues, that he had decided to drop the insurance and that after advising with his wife —the beneficiary—he decided not to carry it any further, are admissible, in an action by his beneficiary. p. 425.

4. INSURANCE.—*Beneficial Associations.—Dues.—Legal Enforcement of Payment of.*—A member of a beneficial association can not be compelled to pay his dues. p. 426.

5. INSURANCE.—*Beneficial Associations.—Nonpayment of Dues.—Change of Employment.*—Where a member of a beneficial order engages in an extra-hazardous employment and fails to pay his dues therefor, he is legally suspended, although there was a controversy over the matter between him and the local secretary; and the reasonableness of the by-law in reference to such extra hazard is not involved. p. 426.

6. TENDER.—*What Constitutes.*—To constitute a tender there must be a definite offer to pay, and an unqualified refusal to accept. p. 426.

7. TENDER.—*Waiver.—Ability to Perform.—Burden of Proof.*—The formal requisites of a tender may be waived, but the ability to perform must exist, the burden of proving such ability being upon the one pleading the tender. p. 427.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by Lizzie Fisher against the Supreme Tent, Knights of the Maccabees of the World. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Warren Sayre, Nelson G. Hunter, C. K. Lucas* and *John V. Sees,* for appellant.

*Lyman H. Jackman* and *Clifford F. Jackman,* for appellee.

COMSTOCK, J.—The complaint was in two paragraphs. The first alleged, in substance, that defendant was a mutual and fraternal beneficiary association, doing business under the laws of the State of Indiana; that on December 30, 1895, Lemuel A. Fisher was duly elected and admitted as a beneficiary member of defendant order, and continued as such beneficiary member until his death on December 29, 1905, and was at all times in good standing and entitled to all the benefits and privileges appertaining and incident to such membership; that said Fisher at all times performed all the duties incumbent upon him as such member, and otherwise complied with all the requirements thereof and performed all the conditions on his part to be performed; that, at the time said Fisher was received as a member of said order, defendant executed and delivered to him a certificate, or policy of insurance, marked exhibit A; that said Fisher died in Huntington county, Indiana, on December 29, 1905; that on said date said certificate was in full force and effect, and that said Fisher had at all times theretofore been a member in good standing of said association; that plaintiff performed all the requirements on her part; that defendant denies liability under said certificate and refuses to furnish plaintiff with blanks for the purpose of making and executing proofs of death, and refuses to accept proofs of death of said Fisher; that plaintiff is the widow of Lemuel A. Fisher, and demands payment of said insurance, but defendant refuses payment.

The second paragraph contains the same allegations as to

appellant association, and the admission of said Fisher and the issuing of a certificate of membership, as set out in said first paragraph, and further alleges that from the date of his admission to November 1, 1905, Fisher was at all times in good standing; that on said November 1, 1905, and during the months of November and December, 1905, there was in full force and effect a certain by-law of defendant company, as follows:

"These monthly rates will be due without notice on the first day of each month, and must be paid by the member to the tent record keeper on or before the last day of the month."

That during said months of November and December, 1905, John V. Sees was record keeper of the local tent of defendant; that on November 18, 1905, Fisher offered to pay and tendered to said Sees for said defendant all moneys and assessments due to defendant for the month of November, 1905; that Sees then and there refused to accept such money. Then follow the same allegations as to Fisher's death and demand of payment as are in the first paragraph. A separate demurrer for want of facts was overruled to each paragraph of complaint, and appellant answered in five paragraphs, to the third and fourth of which demurrers were sustained. Upon the issues formed by the first and second paragraphs of complaint, the first, second and fifth paragraphs of answer, and reply in denial, the case was submitted for trial to a jury, resulting in a verdict and judgment for $1.000 in favor of appellee.

The assignment of errors challenges the correctness of the ruling of the court upon each of said demurrers and upon appellant's motion for a new trial.

The objection urged against the first paragraph of the complaint is based upon that part which is in the following language: "That said defendant denied liability under said certificate and policy of insurance, and refused and still refuses to furnish this plaintiff with blanks for the pur-

pose of making and executing proofs of death, and refuses to accept proofs of death of said Lemuel A. Fisher.''

It is insisted by appellant that the complaint shows upon its face that appellee has failed to comply with the laws of the order; that the death of Lemuel A. Fisher occurred on December 29, 1905, and this suit was commenced on January 14, 1907, and all proofs of death were due before the commencement of this suit and were not filed; that the averments by which appellee attempts to avoid the effect of this laches are not sufficient; that the averment pleaded is not the averment of a fact, but a mere conclusion. Said paragraph, in addition to the foregoing, alleges ''that the insured has at all times performed all the duties incumbent upon him as such member, and has otherwise complied with all the requirements thereof and performed all the conditions on his part to be performed,'' and that the plaintiff has performed all the conditions on her part to be performed. These allegations are sufficient. §376 Burns 1908, §370 R. S. 1881; *Grand Lodge, etc.*, v. *Barwe* (1906), 38 Ind. App. 308, and cases cited; *Firemen's Fund Ins. Co.* v. *Finkelstein* (1905), 164 Ind. 376.

The objection to the second paragraph of complaint is that it does not state the amount due at the date of the alleged tender, nor that the amount tendered was in lawful money, and does not show that the amount tendered was brought into court for the use of defendant. The language with reference to the tender is as follows: ''Plaintiff further says that on November 18, 1905, Lemuel A. Fisher offered to pay and tendered to said John V. Sees, as such authorized and acting record keeper of said defendant, all moneys and assessments due this defendant association for the month of November, 1905; that said John V. Sees, as such authorized and acting record keeper, did then and there refuse to accept such moneys and assessments from said Lemuel A. Fisher, although being authorized by said

defendant association as the record keeper for said local tent
or lodge, and it being his duty to accept such payment.''
The averment may be lacking in definiteness of statement as
to the amount and character of money of the alleged tender,
but this could have been remedied by a motion to make more
specific. We have considered the averments of the third
and fourth paragraphs of answer and the objections thereto.
In these rulings we find no error, but, in view of the conclu-
sion reached, we do not deem it necessary to discuss or fur-
ther refer to them in this opinion.

One of the reasons set out in the motion for a new trial is
that the evidence is insufficient to sustain the verdict.

It also appears that on June 26, 1904, and while the in-
sured was engaged in a nonhazardous employment, defend-
ant revised its by-laws; that said by-laws provided, among
other things, as follows:

"§281. Brakemen on freight-trains shall not be admitted
to the association. §282. Any member who engages in a
prohibited occupation shall forfeit all rights as life ben-
efit member, and his certificate shall thereby become
absolutely null and void. * * * §347. A life benefit
member failing to pay his monthly dues and assessments
within the month on the first day of which they are due
shall stand suspended, without notice, from all rights of
life benefit membership. * * * §394. No benefit shall
be paid on account of the death or disability of a member
who is under suspension for any cause at the time of his
death or disability.''

It is insisted on behalf of appellee, not that the assess-
ments and dues for the month of November, 1905, were paid.
but that the evidence shows an offer to pay and a refusal to
accept—in other words, a tender of said assessments and
dues—and that the conduct of appellant's representative ex-
cused the insured from making actual tender. The only
evidence on the subject of tender was given by the witness
John V. Sees, who, during the months of November and De-
cember was, and ever since has been, record keeper for the

local tent of the defendant order at Huntington, Indiana. In reference to a conversation held with Fisher, the insured, on November 18, 1905, said witness testified: "I went into Hosler's barber shop here in the city to collect Hosler's dues, and Fisher was being shaved, * * * and as I went to go out he called to me and said: 'How about me?' or 'What are you going to do about me? You know I have gone into the railroad service?' And I said: 'No, I did not know it, but I know it now,' or something to that effect, and he said: 'What are you going to do about me?' and I answered him that I was sorry, but I believed under the by-laws that his policy was lapsed, and that I did not believe, under the by-laws, that I had the right to take his money, and that the by-laws were very strict on the record keepers' taking money from people in the railroad service, and explained to him what those by-laws were; that they provide for the expulsion of the record keeper if he did so, but that the final decision of the matter lay with the supreme record keeper of the order, and that, if he wished, I would take his money and send it, along with the rest of the money, and an explanation of his case to the supreme record keeper, and he said something to the effect that there was too much red tape about it to suit him, and he made the remark in a joking sort of way, but he meant it, too, and that he did not believe he would take any further steps in the matter. I told him that unless he paid me before the first of December I would suspend him, and he said if he was going to pay me, or rather, I think he said if he changed his mind he would pay me before that time or let me know about it." Said witness further testified as follows: "Q. Mr. Sees, at that time, in Hosler's barber shop, did he offer to pay you his dues? A. Not any more than the conversation there indicated. That is all that took place between us. Q. Now, Mr. Sees, I will ask you if he did not say to you at that time: 'Mr. Sees, how about it? Will you take my money?' And I will ask you, Mr. Sees, if you did not say to him, no, that you could

not take his money as record keeper, but you would take it as a forwarding agent. A. Well, that is in effect, Mr. Jackman, what was said, and still it was not exactly that. It was more as I stated to you before. Q. Would you take his money there or at any other time as record keeper? A. If he had offered it to me I do not believe that I would have taken it as record keeper, except to forward it to the supreme record keeper, as I stated. Q. Now, did he at no other time offer you any money, or offer to pay his dues? A. No. Q. Mr. Sees I will ask you if you did not tell me at one time in my office that Mr. Fisher had offered to pay his dues— his local dues to the Maccabees—and that you had refused to accept them except as a forwarding agent? A. Something to that effect, Mr. Jackman. I think I made you a somewhat similar statement to what I have made here, except in different language.''

On cross-examination said witness testified: ''Q. Then he [Fisher] did not offer to pay the flat rate, nor, in addition to that, an extra hazard, did he? A. Well, now, he did not make any offer to pay the flat rate except inasmuch as the conversation that I stated before, that he asked me what would be done about his business.'' The records of said local tent of said order show that the insured was suspended on December 1, 1905, for nonpayment of dues. A written notice of his suspension was sent to and received by the insured.

Subsequent to the conversation had on November 18, the record keeper had another conversation with Fisher on or about December 5, 1905, in which the insured stated, in substance, that he had received said written notice of his suspension, and in which he said to Mr. Sees: ''I was coming up to see you about that [insurance]. I have decided to drop it; so you do not need to pay any further attention to it.'' He said that he had talked the matter over with his wife, and as he had some other insurance that he regarded just as good or better he had decided to let it go;

that the Maccabees insurance was only good until he was fifty-five years of age, and that he did not believe he would carry it any further. The statement made by the insured on December 5 is pertinent as showing his purpose, after full consideration, to drop this insurance, and as a further declination upon his part to accept the offer of the tent recorder made with a view of his reinstatement. He clearly elected to accept the suspension as permanent. He was under no legal obligation to pay his assessment. No legal remedy was open to the association to enforce it. The life of the association is dependent upon the payment of assessments according to the provisions of its laws. *Union Mut. Life Ins. Co.* v. *Adler* (1906), 38 Ind. App. 530.

The reasonableness of §282, in reference to members' engaging in hazardous employment, is discussed. The consideration of that question is not necessary, because the insured was suspended under the section which applies to the nonpayment of dues and assessments for the month of November. It is shown without contradiction that the assessment for the month of November, 1905, and which the insured had the entire month in which to pay, was not paid. It appears, too, without dispute that he was suspended on December 1, 1905, for failure to pay his dues; that he was notified in writing by the proper officer of said company of his suspension, and that after he had received such notice he conferred with his wife on the subject and decided, in view of the fact that he had other insurance which he regarded as good, if not better, to drop the insurance in question. The evidence shows neither payment nor tender of payment of the dues in question. To constitute a tender there must be, on the one hand, a definite offer to pay and, on the other hand, an unqualified refusal to accept. *Shotwell's Executors* v. *Dennman* (1793), 1 N. J. L. *174; *Eastland* v. *Longshorn* (1818), 1 Nott. & McC. *194; *Pulsifer* v. *Shepard* (1864), 36 Ill.

513; *Selby* v. *Hurd* (1883), 51 Mich. 1, 16 N. W. 180; *King* v. *Finch* (1878), 60 Ind. 420.

While the formal requisites of tender may be waived, there can be no waiver of performance, unless there is an ability to perform. *Wynkoop* v. *Cowing* (1859), 21 Ill. 570, 587; *Steele* v. *Biggs* (1859), 22 Ill. 643, 656; *Pinney* v. *Jorgenson* (1880), 27 Minn. 26, 6 N. W. 376; *Niederhauser* v. *Detroit, etc., St. R. Co.* (1902), 131 Mich. 550, 91 N. W. 1028; *Shank* v. *Groff* (1898), 45 W. Va. 543, 32 S. E. 248. Appellant's representative did not unqualifiedly refuse to accept the money, nor did appellee ever offer to pay; but even if the claim made by appellee is correct, to make a waiver effective it must appear that the insured had the money in his present or immediate control. Upon this there is no evidence. As to waiver of tender, the cases go no farther than to hold that a refusal in advance to accept, excuses further offer or effort to pay, but it must always be made to appear that the party making the tender has the capacity to do what he was obligated to do. That is one of the essentials of a good tender. Where a party offering to pay has had that offer refused, he is not entitled to treat it as a tender, unless he shows that he was ready and willing to do what he proposed. He can suffer no loss by having been deprived of an opportunity to do what he was in no condition to do. The burden of showing an ability to do a particular thing offered to be done is upon the party making the offer.

Judgment reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.