GOODMAN v. HAYNES AUTOMOBILE CO.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,953.

1. PRINCIPAL AND AGENT (§ 44*)—TERMINATION OF AGENCY—ABANDONMENT.

Where plaintiff, at the first opportunity after being notified of defendant's refusal to perform an agency contract, offered to perform and insisted on 'defendant's performance, and diligently by telegrams, letters, visits, and tenders demanded performance, defendant by its refusal to perform relieved plaintiff from any obligation to make further tender, and it was error to hold that there was a mutual abandonment and rescission of the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 72; Dec. Dig. § 44.*]

2. PRINCIPAL AND AGENT (§ 44*)—ABANDONMENT—PAYMENTS—RECEIPT OF RETURN.

Plaintiff, to obtain an automobile agency contract, delivered to defendant two checks, one for $700 and one for $550. Defendant cashed plaintiff's $700 check, but later, ascertaining that a contract had been made with another in the same territory, elected to cancel plaintiff's contract, returning his $550 check and also its own check to plaintiff for $700. Plaintiff refused to receive these checks, or to consent to an abandonment of the contract; but, being unable to induce defendant to perform later, cashed defendant's check for $700. Held, that the cashing of such check was not per se a consent to defendant's abandonment of the agreement, since plaintiff was not obliged to hold the check for an unlimited time.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 72; Dec. Dig. § 44.*]

In Error to the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Action by Benjamin H. Goodman against the Haynes Automobile Company. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

Plaintiff in error, termed plaintiff herein, entered into an agreement in writing with defendant in error, herein called defendant, on September 1, 1909, at Kokomo, Ind. The contract, in substance, provides that plaintiff, being desirous of securing the exclusive sale of Haynes automobiles in a certain territory therein described, is given such territory on certain conditions, to wit: He buys from the defendant 25 Model 19 Haynes motor cars, to be delivered and paid for prior to October 1, 1910, for which he is to pay the list catalogue price of $2,000 each, less a discount of 20 per cent., f. o. b. Kokomo, Ind., upon their shipment of each car from said city, or sight draft against bill of lading. Plaintiff agreed to deposit with defendant an advance of $50 for each car ordered, being a total of $1,250, to be deducted from cost of each car when shipped. In case plaintiff failed to make sale, the defendant might make the sale and pay plaintiff the regular commission. Plaintiff agreed to make every reasonable effort to increase defendant's sales in his territory, and handle no other cars without defendant's consent. Provision was made to replace and repair defective cars and fill orders promptly. The contract was accompanied by a statement setting out that commissions amounting to 20 per cent. would be allowed to any agents selling less than 5 cars. To an agent selling 5 cars there would be allowed 20 per cent. commission and a rebate at the end of the season of 1½ per cent.; to an agent selling 10 cars a commission of 20 per cent. would be allowed and a rebate of 2 per cent. at the end of the season; to an agent selling 20 cars a commission of 20 per cent. would be paid and a rebate of

3 per cent. at the end of the season; and to an agent selling 25 or more cars a commission of 20 per cent. and a rebate at the end of the season sufficient to make a flat discount of 25 per cent. on each car purchased. The contract contained various agency and other provisions not in question here. The sum of $50 per car, or an aggregate of $1,250, was paid by plaintiff to defendant at the date of the contract as follows, to wit: One check of $700, and another of $550. Of these defendant deposited the $700 check to its own credit. Afterwards, on September 8, 1909, defendant notified plaintiff by wire, received by plaintiff the same day, confirming it by mail, that it would be unable to carry out the contract for the reason that on the day the contract was entered into and a short time prior thereto—a matter of several hours—one of defendant's agents, located at Omaha, Neb., had executed a like contract to another party, which latter contract, being executed prior to that of plaintiff, would take precedence of plaintiff's contract, and that defendant could not therefore carry out its contract with plaintiff. This letter of confirmation was received by plaintiff on September 10, 1909, and covered plaintiff's original check for $550 returned and defendant's check for $700 in lieu of plaintiff's check which defendant had cashed. This latter check plaintiff held until November 15, 1909, when he cashed it. On September 8, 1909, plaintiff telegraphed defendant that he expected him to fulfill his contract. On September 10, 1909, after receiving defendant's letter, plaintiff telegraphed defendant, saying: "Received your letter of 8th. There is contract between us duly signed; am ready to carry it out; expect you carry out your part." On September 16, 1909, plaintiff again wrote to defendant demanding performance, and saying that he stood ready to perform, and warning defendant that he would hold it for every Haynes automobile sold in his territory at any time, and would hold it for all damages, including the commission on each car sold in his territory. On September 28, 1909, plaintiff wrote E. Haynes, president of defendant, personally, setting out that the second party to the alleged prior contract was violating defendant's contract with plaintiff. This letter was received by Haynes at Kokomo on September 30, 1909. On October 3, 1909, plaintiff received from defendant a letter, dated October 1, 1909, reasserting that the other party's contract had been signed first, and that defendant did not see how it could have done otherwise than it did. It further appears that plaintiff went from Omaha to Kokomo, and called at defendant's place of business on October 5, 1909, and again on October 15, 1909, and made tender on one or both of said visits to defendant of said checks which defendant had sent to him, and on one or both of the said occasions tendered it, the defendant, $1,250, in legal tender notes, both of which tenders defendant refused to accept, and then again, and upon other dates, informed plaintiff that it would not perform said contract.

Thereupon plaintiff brought suit, setting up the contract, the said correspondence and tenders, also averring that the selling price of the 25 cars was $2,000 each; that the price made to plaintiff amounted to $1,500 each on said cars; that plaintiff's profit in each case was $500; that he had advertised expensively and extensively; that he could have sold said cars in his territory; that defendant had appointed an agent in his territory who had sold many Haynes automobiles, viz., 50; that he would have realized $12,500 on said 25 automobiles, and had been damaged $25,000. To the complaint defendant filed its answer containing two paragraphs: (1) Defendant denies every material allegation thereof. (2) Defendant admitted the execution of the contract and the payment of $1,250; that it held the $550 check until September 25, 1909, and deposited the $700 in its account. It then sets out the telegrams of September 8, 1909, aforesaid, the said letter of confirmation of the same date covering the return advance of $1,250, stating that plaintiff appropriated said $1,250 to his own use; that he never offered to return the same to the defendant; that plaintiff has never at any time since November 15, 1909, claimed anything under said contract, or offered to deposit any sum of money as required by the contract as an advance payment, but did receive said returned checks in abandonment and rescission of the contract sued on, and the same was then and there rescinded by the acts of

the parties thereto. To this second paragraph plaintiff filed a demurrer, which the court overruled. Thereupon plaintiff made reply to the second paragraph of the answer, denying the material allegations thereof, and admitting the receipt of the said telegram of September 8, 1909, and confirmatory letter of the same date, the payment of the $1,250, the cashing by the defendant of the $700 check, the return of the $550 check and defendant's $700 check, and the cashing by plaintiff of the $700 check on November 15, 1909. Said reply further sets up plaintiff's said telegram of September 8, 1909, to defendant, said telegram of September 10, 1909, his said letter of September 16, 1909, to defendant, his said letter to E. Haynes, president of defendant, dated September 28, 1909, and avers the receipt thereof by defendant. Said reply also sets out defendant's letter of October 1, 1909, confirming the position taken by defendant in refusing to carry out the contract, also said visits of plaintiff to defendant on October 5, 1909, and October 15, 1909, the tender of said checks and of said legal tender to the amount of $1,250, and the refusal of defendant to accept the same and its declaration that it would not perform said contract in any manner whatsoever. Said reply further alleges the refusal of the defendant to perform made through its counsel to plaintiff's counsel. Plaintiff also sets up a letter written by his counsel to one Elmer, an officer of defendant company, asking the latter to have the matter adjusted, but without effect, avers his own readiness to carry out the contract, denies all intention and attempts to rescind, and asks judgment. Defendant thereupon filed its demurrer to paragraphs 2 and 3 of said reply, which set up in detail said transaction, which demurrer the court sustained.

Afterwards said cause went to trial. Plaintiff introduced but one witness, himself, who swore to the receipt and sending of the correspondence, the telegrams aforesaid, the tenders of October 5 and 15, 1909, and the refusal of defendant to perform, stating that it was unable to do so. Plaintiff also testified that the cars in question were worth $2,000 and freight each at the time and place of delivery at Kokomo, Ind. On cross-examination plaintiff testified that he had to pay the freight from Kokomo to Omaha, that he received the returned checks and defendant cashed the $700 draft, and that he cashed the returned check of $700 on November 15, 1909, after the tender was made. Defendant introduced but one witness, one Starbuck, treasurer of defendant, who testified that the $550 check was never in defendant's possession after September 8, 1909, that the $700 check was cashed by plaintiff, that defendant received nothing from plaintiff after November 1, 1909, and that nothing was offered defendant after November 15, 1909, on the contract. Thereupon, on motion of defendant, the court directed the jury to find for defendant, which was done, and judgment entered on the verdict.

For errors, plaintiff assigns: (1) That the court overruled plaintiff's demurrer to defendant's answer; (2) that the court sustained defendant's demurrer to plaintiff's reply; (3) that the court instructed a verdict for defendant and entered judgment thereon.

Henley & Baker, of Indianapolis, Ind. (Matson & Gates and Roby & Watson, all of Indianapolis, Ind., of counsel), for plaintiff in error.

Conrad Wolf, of Kokomo, Ind. (James C. Blacklidge and Earl B. Barnes, both of Kokomo, Ind., of counsel), for defendant in error.

Before BAKER and KOHLSAAT, Circuit Judges, and CARPENTER, District Judge.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] The evidence in this case does not as a matter of law sustain the contention that plaintiff either by act or word consented to the rescission of the contract. At the first opportunity, and from then on, he insisted on defendant's performance on his part thereof. He diligently, by telegrams, letters, visits, and tenders, insisted on his right to have defendant perform. Under the facts of the case, the court cannot

say, as a matter of law, that there was a mutual abandonment and rescission of the contract. Defendant, by its flat refusal to perform, relieved plaintiff from any obligation to make further tender. In Anvil Mining Company v. Humble, 153 U. S. 540–552, 14 Sup. Ct. 876, 880 (38 L. Ed. 814), it is said:

"When one party to a contract renounces it and refuses to perform, the other party may treat the contract as broken and abandon it without demand or tender of performance, and recover as damages the profits he would have received through full performance. Such an abandonment is not a rescission of the contract, but a mere acceptance of the situation which the wrongdoing of the other party has brought about."

To the same effect are United States v. Behan, 110 U. S. 344, 4 Sup. Ct. 81, 28 L. Ed. 168; Packers' Fertilizer Co. v. Harris, 42 Ind. App. 240, 85 N. E. 375; Missouri Coal Co. v. Pomeroy, 80 Ill. App. 144. The law does not require a party to do a useless act. Stokes v. Mackay, 147 N. Y. 223, 41 N. E. 496. It requires the concurrent acts of both parties, both to make and to rescind the contract.

In Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, the court adopted the rule laid down in Hochster v. De la Tour, 2 El. & Bl. 678, and Johnstone v. Milling Co., 16 Q. B. Div. 467 (English), where it is said:

"When one party assumes to renounce the contract, that is, by anticipation refuses to perform it, he thereby so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not, of course, amount to a rescission of the contract, because one party to a contract cannot by himself rescind it; but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect of such wrongful rescission. The other party may adopt such renunciation of the contract by so acting upon it as in effect to declare that he too treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation."

Substantially to the same effect are Anvil Mining Co. v. Humble, supra, West v. Platt, 127 Mass. 367, and Worthen v. Wilmot, 30 Vt. 555. In the margin we cite many cases holding that it is not necessary to tender to one who announces in advance that the tender will not be accepted.[1]

[2] Even were the law otherwise, the question as to whether or not the circumstances here advanced warranted a finding that plaintiff had by his conduct or otherwise assented to the rescission of the contract was a question of fact, involving the intention of both parties, and should have been submitted to the jury. Hanson & Parker v. Wit-

[1] Mathis v. Thomas, 101 Ind. 119–121; Thompson v. Lyon, 40 W. Va. 87, 20 S. E. 812; Schlib v. Pendleton, 76 Mo. App. 454; Martin v. Bank of Fayetteville, 131 N. C. 121, 42 S. E. 558; Ansley v. Hightower, 120 Ga. 719, 48 S. E. 197; Beatty v. Miller, 47 Ind. App. 494, 94 N. E. 897; Supreme Tent Knights of Maccabees of the World v. Fisher, 45 Ind. App. 419, 90 N. E. 1044; Gorham v. Farson, 119 Ill. 425, 10 N. E. 1; Williams v. Patrick, 177 Mass. 160, 58 N. E. 583; Root v. Johnson, 99 Ala. 90, 10 South. 293; Hall v. Insurance Co., 57 Conn. 105, 17 Atl. 356; Natural Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731; Lacy v. Williams, 24 Mich. 479; Mechem, Law of Sales, §§ 1106, 1107.

temberg, 205 Mass. 319, 91 N. E. 383; Gwynne v. Ramsey, 92 Ind. 414; Hobbs v. Columbia Falls Brick Co., 157 Mass. 109, 31 N. E. 756. This would be particularly the case as regards the cashing of the $700 check by plaintiff after his tender, and defendant's refusal to accept the $1,250. It was not per se a consent to defendant's abandonment of the agreement to deposit and receive the cash on said check. Plaintiff was not obligated to hold the check for an unlimited time. After all hope of defendant's ability and disposition to accept the advance and perform the contract, plaintiff was at liberty to deal with the checks as his own, at least to the extent of reducing them to cash, without abandoning his right to have the contract enforced. In the condition of the evidence, it was not for the court, as a matter of law, to say whether, under all the circumstances of the case, plaintiff had consented to the rescission of the contract.

The rulings of the court on the several demurrers and upon the motion to take from the jury all tend to the same proposition; i. e., that the facts adduced established, as a matter of law, plaintiff's waiver of any rights he might have had under the contract. This we do not deem to be the law of the case. The judgment of the District Court is therefore reversed, with direction to grant a new trial, overrule the demurrer to the reply, and proceed further in accordance herewith.